FIFTH DIVISION
April 29, 2011

No. 1-10-1939

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| LEON AYLWARD, JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois, |
| | ) | County Department, |
| | ) | Law Division. |
| | ) | |
| | ) | No. 2009 L 002558 |
| | ) | |
| MICHAEL SETTECASE, D.O., *et al.*, | ) | Honorable |
| | ) | Diane Larsen, |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE JOSEPH GORDON delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald-Smith and Justice Howse concurred in the judgment and
opinion.

**OPINION**

Leon Aylward, Jr. (plaintiff), filed the instant medical malpractice action against

Michael Settecase, D.O. (defendant), and his employer, Midwest Physician Group, Ltd.

(MPG) (collectively, defendants), alleging that they failed to diagnose his lung cancer in a

timely manner. During discovery, MPG sought permission to communicate *ex parte* with

various members of its staff who were involved in plaintiff's medical treatment while he was

10-1939

a patient at MPG, but who were not named as defendants in plaintiff's lawsuit. The court

initially granted MPG's request but later reversed its decision by granting plaintiff's motion

to reconsider and prohibited MPG from engaging in any such contact. Defendants moved

for and the trial court certified a question pursuant to Illinois Supreme Court Rule 308. Ill. S.

Ct. R. 308 (eff. Feb. 26, 2010).

## I.  BACKGROUND

The following facts are not in dispute.  Defendant is employed by MPG and formerly

was plaintiff's primary care physician during plaintiff's time as a patient of MPG. During

plaintiff's tenure as a patient of defendant, he received care and treatment from several MPG

physicians and employees (collectively, MPG employees) who are not joined as defendants

in this action.

Plaintiff alleges that he contracted lung cancer in September 2005, while he was

being treated by defendant, but there was no diagnosis of that cancer until February 2007.

During that period, plaintiff, a 20 year smoker, allegedly complained to defendant about

chest congestion, chest pain, and wheezing, but defendant did not order a chest X-ray, refer

plaintiff to a pulmonary specialist, or order follow-up visits.  This delay is the basis for

plaintiff's claim that defendants negligently failed to diagnose and treat his lung cancer in a

timely manner.

In his original complaint, plaintiff alleged that MPG "through its agents servants

and/or employees" undertook to render medical care to plaintiff.  Pursuant to the Illinois

10-1939

Code of Civil Procedure (735 ILCS 5/2-622 (West 2008)), attached to that complaint was the affidavit of a licensed physician and clinical professor of medicine stating, "If [defendant] had ordered a chest X-Ray or other imaging study, [plaintiff's] lung cancer would have been diagnosed, and the appropriate treatment would have been rendered at that time, which more likely than not would have prevented or lessened his subsequent injuries."

As discovery progressed, counsel for MPG wrote plaintiff's counsel in October 2009 requesting permission to contact the MPG employees to discuss their treatment of plaintiff. Plaintiff's counsel objected to this request on the grounds that they were not parties to the case, stating "at this time, the only individual defendant to [plaintiff's] lawsuit is [defendant]. Consequently we decline to give you permission to speak with [the MPG employees] regarding the care and treatment of [plaintiff]." In November 2009, defendants filed a motion for leave to have *ex parte* communications with the MPG employees. Before the court issued a decision on that motion, plaintiff amended his complaint, removing the language "through its agents servants and/or employees" and instead alleged that MPG, "through the conduct of [defendant], undertook to render care, diagnosis, treatment and other medical services to [plaintiff] for pecuniary consideration." Despite the amendment, the trial court granted defendants' motion and plaintiff filed a motion to reconsider. The trial court granted that motion, denying defendants' request to engage in *ex parte* communications with the MPG employees. Defendants then requested a certified question to permit them to file an interlocutory appeal pursuant to Supreme Court Rule 308, which the trial court granted. That certified question was:

"Whether counsel for co-defendant multi-speciality clinic, in a

malpractice action, can communicate *ex parte* with its

employees whose actions may be the basis for liability against

the clinic."


## II. ANALYSIS

Defendants raise one issue on appeal, namely, that their defense counsel should be permitted to communicate *ex parte* with the MPG employees whose actions are not currently the basis for liability against MPG, but may be in the future. They contend that they will be prejudiced if they are not allowed to do so under the rationale of *Porter*, which recognizes that plaintiff could potentially make additional claims of negligence based on the actions of the MPG employees after the close of discovery but before the commencement of trial. See *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 360-62 (2008) (holding that a plaintiff may add a new claim after the statute of limitations period has expired if it bears a "sufficiently close relationship" to the original).

Plaintiff, however first contends that this appeal should be dismissed as purely hypothetical because the events that would lead to the prejudice defendants complain of have not yet occurred, and second, that established precedent clearly holds that MPG may not communicate with the MPG employees. As shall be fully discussed below, we do not agree that this appeal should be dismissed. However, we do agree with plaintiff's position on the merits.

Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010) permits appellate review of interlocutory orders that involve a question of law as to which there is a substantial ground for

difference of opinion and where an immediate appeal may materially advance the ultimate termination of the litigation. We have recognized that if a question certified pursuant to Rule 308(a) "calls for a hypothetical answer with no practical effect, we should refrain from answering it." *Lawndale Restoration Limited Partnership v. Acordia of Illinois, Inc.*, 367 Ill. App. 3d 24, 27 (2006). Similarly, a reviewing court "generally declines to issue advisory opinions on moot or abstract questions." *In re Commitment of Hernandez*, 239 Ill. 2d 195, 201 (2010). Here, this is not the case. Answering this question will have an immediate effect upon the discovery process by determining whether MPG is permitted to represent the MPG employees, and thus, its resolution may materially advance the ultimate termination of the litigation. Accordingly, we will consider the merits of the certified question.

The foundations of the current doctrine governing a defendant's *ex parte* communications with a plaintiff's treating physician are articulated in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986). In that case, a products liability action, plaintiffs suffered injuries caused by defendants' allegedly defective products. Defense counsel engaged in *ex parte* communication with a plaintiff's treating physicians to ascertain the extent of the plaintiff's injuries. The physicians' conduct was not a basis for the defendants' liability. The trial court barred defense counsel from continuing to do so and found him in contempt when he did not comply with that prohibition. On appeal, defense counsel argued that the plaintiffs waived their physician-patient privilege when they filed suit. The appellate court disagreed, reasoning that "principles of public policy, obligations created by confidential and fiduciary relationships, and the ethical responsibilities of modern-day professionals" prohibit *ex parte* communications between defense counsel and a plaintiff's

treating physician. *Petrillo*, 148 Ill. App. 3d at 610.

Subsequent cases, which the parties both agree are controlling, have discussed the applicability of the *Petrillo* doctrine to the issue of *ex parte* communication between a hospital defendant and its medical professional employees. See *Ritter v. Rush-Presbyterian St. Luke's Medical Center*, 177 Ill. App. 3d 313 (1988); *Morgan v. County of Cook*, 252 Ill. App. 3d 947 (1993). In these cases, the appellate court held that while the right of a defendant hospital to defend itself transcends the physician-patient privilege as to permit it to communicate with employees for whose conduct the hospital is alleged to be liable, it is barred from doing so with employees whose actions are not at issue.

In *Ritter*, the plaintiff filed a malpractice suit against a hospital after she fell off a gurney while receiving treatment there. The hospital's risk manager interviewed the physicians who treated the plaintiff after her fall, and the plaintiff obtained a protective order barring the hospital from engaging in further contact with them. Those physicians were not named as defendants and were not a basis for the hospital's liability. The hospital disregarded the order and its attorneys interviewed the physicians prior to trial. The trial court barred the hospital from calling those physicians and assessed attorney fees, and the hospital appealed, arguing that *Petrillo* was inapplicable to the circumstances of the plaintiff's case. *Ritter*, 177 Ill. App. 3d at 315-16.

The appellate court disagreed. It held that while under *Petrillo*, barring the hospital from communicating with an employee-physician for whose conduct it was allegedly liable would effectively prevent it from defending itself, that rationale did not extend to communications with employees whose conduct is not a basis for liability as provided for in

the complaint. The court found that in such a situation, the hospital's right to defend itself did not justify an abrogation of the physician-patient privilege. *Ritter*, 177 Ill. App. 3d at 317-18.

The holding of *Ritter* was upheld in *Testin*, where the defendant medical clinic sought to engage in *ex parte* communications with its employees, some of whom were named defendants and some of whom were not. *Testin v. Dreyer Medical Clinic*, 238 Ill. App. 3d 883, 888 (1992), *reversed on other grounds sub nom. Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205 (1994). The hospital argued that because *Ritter* permitted it to communicate with its employees for whose conduct it was being held liable, it should also be allowed to communicate with those whose conduct was not raised as an issue in the pleadings.

The appellate court, following *Petrillo* and *Ritter*, disagreed. It held that while the physician-patient privilege did not bar the medical clinic from communicating with the allegedly negligent physician through whom it may have been vicariously liable, the privilege still protected the plaintiff from disclosures by the physician-employees whose conduct was not a basis for a clinic's potential liability. *Testin*, 238 Ill. App. 3d at 889.

Similarly, in *Morgan*, the plaintiff filed a medical malpractice suit, naming the hospital, as well as his treating physician, as defendants. During discovery, the hospital's attorney engaged in *ex parte* communications with physicians employed by the hospital who treated the plaintiff, but whose conduct was not a basis for the hospital's liability. At trial, the plaintiff moved to bar the testimony of those physicians because, he claimed, the hospital's communications with them violated *Petrillo*. The trial court agreed and the hospital appealed. *Morgan*, 252 Ill. App. 3d at 949. Reversing the trial court's decision, the appellate court,

following the decisions of *Ritter* and *Testin*, held that if a plaintiff attempts to hold a hospital liable for the conduct of its own physician-employees, "the defendant hospital is included within the physician-patient privilege and the patient has impliedly consented to the release of his medical information to the defendant hospital's attorneys." *Morgan*, 252 Ill. App. 3d at 954. The *Morgan* court went on to hold, however, that *Petrillo* and its progeny still forbid "*ex parte* conferences between defense counsel and plaintiff's treating physician" when that physician's conduct was not a basis for the hospital's liability. *Morgan*, 252 Ill. App. 3d at 954.

Here, the defendants acknowledge that the holdings in these cases "are still good law and applicable here," but urge that these holdings must be expanded to allow MPG to engage in *ex parte* communications with its employees who are not named as defendants and whose actions are not a basis for MPG's liability since they may become a basis for liability in the future under the liberalized joinder rule articulated in *Porter*. We disagree.

In *Porter*, our supreme court adopted a more relaxed standard for amending pleadings, allowing a plaintiff to add claims against a defendant that would otherwise be barred by statutes of limitations, as long as they were substantially related to the original claim. In that case, the plaintiff sued his doctor and hospital for medical malpractice. Years later, during the course of discovery, the plaintiff attempted to amend his complaint to include a new claim against the hospital. The hospital objected, arguing that because the claim was new and different from the plaintiff's original claim against it, it was therefore barred by the statute of limitations. The plaintiff, however, argued that the claim "related back" to the date of the timely filed complaint and therefore was not barred. *Porter*, 227 Ill. 2d at 350. Our supreme

court agreed with the plaintiff, holding that a plaintiff may add a new claim where there exists a " 'sufficiently close relationship' between the original and new claims, both in temporal proximity and in the general character of the sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury." *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 359 (2008) (quoting *In re Olympia Brewing Co. Securities Litigation*, 612 F. Supp. 1370, 1371-72 (N.D. Ill. 1985)). The court went on to find that plaintiff's new claim against the hospital was sufficiently related to his original claims to allow the amendment. *Porter*, 227 Ill. 2d at 361.

We fail to see how the resolution of *Porter* impacts upon the established precedents of *Ritter* and its progeny. While *Porter could* conceivably permit plaintiff to add additional claims against MPG, he has not done so yet, and the prejudice defendants allege they may suffer is purely hypothetical at this time. Moreover, there is no indication that plaintiff is seeking or will seek to hold MPG liable for the actions of the MPG employees. Plaintiff's amended complaint, as well as the attached physician's report, suggests just the opposite, namely, that plaintiff intends to hold defendant and MPG liable for defendant's alleged negligence. Those documents indicate that defendant's failure to order a chest X-ray for plaintiff, not the alleged negligence of the MPG employees, constituted a breach of the standard of care and caused plaintiff's alleged injuries. Plaintiff's amended complaint went so far as to remove language found in the initial complaint ("through its agents servants and/or employees") that would leave open the possibility that any MPG employees other than defendant were potentially liable for plaintiff's injuries. The law governing this matter, as espoused in *Petrillo* and its progeny, is clear: unless and until the actions of the MPG

employees are alleged to be a basis for plaintiff's injuries, MPG cannot engage in *ex parte* communications with them. In effect, defendants are asking for unfettered access to communicate with anyone involved in plaintiff's treatment based upon the mere speculation that the conduct of those individuals may, at some later time, be joined as a basis for their liability. The impact of such an expansion would substantially erode the rationale underlying *Petrillo* and its progeny and permit defendants to communicate with essentially anyone, regardless of privilege. We therefore refuse to attempt to overrule or disregard over two decades worth of established precedent protecting the sanctity of the physician-patient privilege in order to afford defendants the opportunity to prepare for claims not yet brought by plaintiff.

Furthermore, even if, as defendants suggests, plaintiff does seek to "change the theory of liability or add allegations through unnamed and undefended providers whose actions now implicate [MPG] under a different theory" immediately prior to trial, a departure from the holdings of the *Petrillo* line of cases would still not be warranted. While plaintiff may seek to amend his pleadings, it is far from a foregone conclusion that he would be able to do so. See *Bell v. Toluca Coal Co.*, 272 Ill. 576, 583 (1916) (allowing an amendment to the pleadings lies within the discretion of the trial court); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263. 273 (1992) (four factors must be considered before a plaintiff is permitted to add additional claims, including whether the other parties would be prejudiced or surprised by virtue of the new claim). Moreover, there are numerous safeguards in place to protect defendants from the kind of prejudice they claim they may suffer, including giving defendants reasonable time to prepare or even reopening discovery. See *Greenberger, Krauss &*

10-1939

*Tenenbaum v. Catalfo*, 293 Ill. App. 3d 88, 99 (1997) (plaintiffs were not prejudiced by defendant's amendment to the pleadings because the trial court granted them reasonable time to prepare); *Paul H. Schwendener, Inc. v. Larrabee Commons Partners*, 338 Ill. App. 3d 19, 32 (2003) ("The amendment of pleadings to state a new claim after the close of discovery usually requires reopening of discovery.").

We do not believe that *Porter* compels us to depart from the established line of cases protecting the sanctity of the physician-patient privilege and prohibiting the very type of conduct defendants now ask us to sanction. *Petrillo*, *Ritter*, *Testin*, and *Morgan* all expressly prohibit a defendant such as MPG from engaging in *ex parte* communications with a plaintiff's treating physician whose actions are not a potential basis for the hospital's liability.

### III. CONCLUSION

For the foregoing reasons, we answer the certified in the negative, and find that defense counsel may not engage in *ex parte* communications with the MPG employees.

Certified question answered.