265 P.3d 417 (2011)
PHOENIX CHILDREN'S HOSPITAL, INC., Petitioner,
v.
The Honorable Larry GRANT, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,
Joseph Riddle and Lesa Riddle, husband and wife, individually, and on behalf of their minor daughter, Alesha Riddle, Real Parties in Interest.
No. 1 CA-SA 11-0170.
Court of Appeals of Arizona, Division 1, Department E.
November 1, 2011.
*418 Fennemore Craig, P.C. by Timothy Berg, Scott L. Altes, and Sanders & Parks, P.C. by John A. Black, Phoenix, Attorneys for Petitioner.
Snyder and Wenner, P.C. by Howard M. Snyder and Law Offices of Robert S. Murphy, LLC by Robert S. Murphy, Phoenix, Attorneys for Real Parties in Interest.
Haralson, Miller, Pitt, Feldman & McAnally, PLC by Stanley G. Feldman, Tucson, and Knapp & Roberts, P.C. by David L. Abney, Scottsdale, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association.
Coppersmith, Schermer & Brockleman, PLC by Karen C. Owens, Scott M. Bennett, Phoenix, Attorneys for Amicus Curiae Arizona Hospital and Healthcare Association.
Snell & Wilmer, LLP by Barry D. Halpern, Paul Giancola, Sara J. Agne, Phoenix, Attorneys for Amicus Curiae Arizona Medical Association and Mayo Clinic Arizona.
Jones, Skelton & Hochuli, PLC by William R. Jones, Jr., Lori L. Voepel, Phoenix, Attorneys for Amici Curiae Mutual Insurance Company Of Arizona and Scottsdale Healthcare Hospitals.
Campbell, Yost, Clare & Norell, PC by Kari B. Zangerle, Troy D. Roberts, Phoenix, Attorneys for Amici Curiae Tucson Medical Center and Catholic Healthcare West.

OPINION
IRVINE, Presiding Judge.
¶ 1 In Duquette v. Superior Court, 161 Ariz. 269, 778 P.2d 634 (App.1989), this Court held that defense counsel in a medical malpractice action may not engage in ex parte communications with a plaintiff's treating physicians without the plaintiff's consent. This special action asks us to decide if the ruling in Duquette bars communications between a defendant hospital and its counsel, and the hospital's own employees who provided treatment to the plaintiff. We hold that it does not. Therefore, we accept jurisdiction and grant relief.

FACTS AND PROCEDURAL HISTORY
¶ 2 The issue before us arises from a medical malpractice case brought by Joseph and Lesa Riddle (the "Riddles") individually and on behalf of their minor daughter, Alesha. Alesha was born with severe medical problems. She was admitted to Phoenix Children's Hospital ("PCH") for treatment, and remained there for many months. The Riddles allege that while Alesha was at PCH, nurse Lindy Teraji, a PCH employee, negligently placed a feeding tube into Alesha's trachea instead of her stomach, causing food to go into her lung, resulting in catastrophic and permanent injuries. Following this incident, Alesha continued to be treated at PCH by many different physicians and other personnel. Her treatment by PCH continues to this day.
¶ 3 The Riddles sued PCH and nurse Teraji. Citing Duquette, the Riddles filed a motion seeking to bar communications between PCH and/or its counsel and PCH employees who had treated or were treating Alesha, other than any employees who were affirmatively alleged to be liable. The trial court granted the motion.
*419 ¶ 4 PCH later filed a Motion to Permit Ex Parte Communications Between Counsel and Phoenix Children's Hospital Employees Who Treated Plaintiff Alesha Riddle. PCH also addressed the upcoming deposition of Dr. Jeffrey Pearl, a PCH-employed surgeon who had performed multiple surgeries on Alesha. PCH argued the court's ruling prevented it from adequately preparing Dr. Pearl for his deposition or effectively providing him with legal counsel.
¶ 5 The court issued an order treating PCH's motion as a motion for reconsideration and denying it. Regarding Dr. Pearl, the trial court ruled:
IT IS FURTHER ORDERED that Phoenix Children's Hospital, if they chose so, may retain the services of an attorney to represent Dr. Pearl at Dr. Pearl's deposition.
IT IS FURTHER ORDERED should Phoenix Children's Hospital retain the services of counsel for that purpose, that attorney shall not communicate with either attorney Black [PCH's counsel] or Phoenix Children's Hospital concerning anything related to the care and treatment by the treating physician with respect to the Plaintiff. Phoenix Children's Hospital cannot communicate what transpired between Dr. Pearl and counsel either.
Following PCH's notice of its intent to file this special action, the trial court stayed all discovery.

JURISDICTION
¶ 6 PCH contends that this Court should accept special action jurisdiction because it does not have an equally plain, speedy and adequate remedy by appeal, and the issue raised is of state-wide importance that is likely to recur. We agree. The issue presented is a question of law that may arise in numerous cases in the superior court. We decided Duquette as a special action, and we conclude that clarifying its application in a different context is also suitable for special action review. Therefore, we accept jurisdiction.

DISCUSSION
¶ 7 This special action presents a narrow issue: Does our prior ruling in Duquette bar communications outside of formal discovery between a defendant hospital, and its counsel, and the hospital's own employees who provided treatment to the plaintiff?[1]
¶ 8 Arizona law recognizes that physician-patient communications are privileged. Arizona Revised Statutes ("A.R.S.") section 12-2235 (2003) states:
In a civil action a physician or surgeon shall not, without the consent of his patient, or the conservator or guardian of the patient, be examined as to any communication made by his patient with reference to any physical or mental disease or disorder or supposed physical or mental disease or disorder or as to any such knowledge obtained by personal examination of the patient.
The purpose of the privilege is to encourage "full and frank disclosure of medical history and symptoms by a patient to his doctor." Lewin v. Jackson, 108 Ariz. 27, 31, 492 P.2d 406, 410 (1972). "Because the privilege prevents the disclosure of what may be highly relevant information, it is to be strictly construed." McAuliffe & Wahl, Law of Evidence, § 501.7, at 220 (4th ed. 2008) (citing State ex rel. Udall v. Superior Court, 183 Ariz. 462, 904 P.2d 1286 (App.1995)).
¶ 9 When a patient files a medical malpractice lawsuit, the privilege is impliedly waived to allow the defendant access to information *420 necessary to make a defense. In Bain v. Superior Court, 148 Ariz. 331, 334, 714 P.2d 824, 827 (1986), our supreme court explained that when a patient "places a particular medical condition at issue by means of a claim or affirmative defense then the privilege will be deemed waived with respect to that particular medical condition." (Citation omitted.)
¶ 10 Duquette addressed how to give effect to the implied waiver of the privilege in a malpractice lawsuit while protecting the interests of the patient holding the privilege. The defense attorneys interpreted the implied waiver as allowing them essentially unfettered access to a plaintiff's treating physicians. Plaintiffs argued the implied waiver was narrower, allowing treating physicians to be examined only through the formal methods of discovery available to a party to a civil action. See A.R.S. § 12-2235 ("In a civil action a physician or surgeon shall not ... be examined."). This Court agreed with the plaintiffs.
Upon review of the numerous countervailing public policy considerations presented on the issue in this case, we conclude that the advantages to be gained in the informal ex parte procedure are clearly outweighed by the dangers that procedure presents to the physician-patient relationship as well as by the pressures the procedure brings to bear on the physician and attorney participants. We agree wholeheartedly with the Supreme Court of Washington when it stated that "[t]he unique nature of the physician-patient relationship and the dangers which ex parte interviews pose justify the direct involvement of counsel in any contact between defense counsel and a plaintiff's physician." Accordingly, based upon the provisions of A.R.S. § 12-2235 and public policy, we hold that defense counsel in a medical malpractice action may not engage in non-consensual ex parte communications with plaintiff's treating physician.
Duquette, 161 Ariz. at 277, 778 P.2d at 642 (citation omitted).
¶ 11 PCH argues in its petition that Duquette does not apply to treating physicians who are employed by a hospital that is a defendant. It alleges that communications between a hospital and its employees are not prohibited by the physician-patient privilege, so applying Duquette would not serve to protect any existing right of confidentiality. Instead, it argues, applying Duquette would improperly impose a new restriction arising solely because a lawsuit was filed. PCH also complains that the trial court's orders preclude it from communicating with its own employees whose conduct may become at issue in this lawsuit, even if they have not yet been named. It cites to Arizona's corporate attorney-client privilege as supporting its right to communicate with its employees who treated a patient. Finally, it argues that important public policy considerations mandate that PCH be able to communicate with its employees regarding the work that they do in caring for a patient.
¶ 12 The Riddles respond that the trial court properly applied Duquette, noting that the broad language of that decision makes no exception for treating physicians who are employees of a hospital defendant. They point to the physician-patient privilege as creating sacrosanct rights and obligations, including obligations to protect patient information and not assist in efforts to minimize a patient's claims against the hospital. They acknowledge that Duquette does not apply to employees who are themselves named as defendants in the malpractice action, but argue that the policies underlying Duquette apply to other employed physicians. Those policies include the confidential/fiduciary physician-patient relationship, pressure brought on a physician to be interviewed even when free to refuse, and the enhanced risk of disclosing information not included in the implied waiver. They also argue that it is inaccurate to claim that other PCH employees may be liable and that any attorney-client relationship with a treating physician cannot destroy the rights and obligations created by the physician-patient relationship.
¶ 13 We begin by finding that Duquette did not decide the issue before us. Duquette did not consider the issue of access by defense counsel to treating physicians in the context of physicians employed by an institutional defendant. The parties here disagree whether *421 it was possible or likely that some of the physicians involved in Duquette were in fact hospital employees, but it is plain that any employment relationship did not enter into the court's careful balancing of the interests at stake.
¶ 14 The issue raised in this special action is different from Duquette because the implied waiver is not the source of PCH's authority to discuss Alesha's medical condition with her treating physicians. The treating physicians are employees of PCH. Their knowledge of Alesha exists because they are treating her as agents and employees of the hospital, and that knowledge is presumptively shared with their employer.[2] Our supreme court has stated:
[T]he knowledge of a corporate agent is imputed to the corporation if it is acquired by the agent within the scope of his or her employment and relates to a matter within his or her authority.
Samaritan Found. v. Goodfarb, 176 Ariz. 497, 503, 862 P.2d 870, 876 (1993). In the context of a medical malpractice lawsuit, the supreme court previously explained:
There is a well established rule in the law of agency that a corporation is bound by the knowledge acquired by, or notice given to, its agents or officers which is within the scope of their authority and which is in reference to a matter to which their authority extends. This rule is based on a conclusive presumption that the agent will communicate to the corporation whatever knowledge or notice he receives in relation to his agency which is necessary for the protection of the interests of the corporation.
Fridena v. Evans, 127 Ariz. 516, 519, 622 P.2d 463, 466 (1980).
¶ 15 Applying these principles, a hospital's right to discuss a plaintiff/patient with its own employees exists because the employment relationship exists. That right is not dependent on the implied waiver arising from the filing of the malpractice lawsuit. We see no reason why the filing of a lawsuit expands the physician-patient privilege to bar communications that are otherwise allowed. Therefore, we conclude that Duquette does not apply to treating physicians who are employees of a corporate defendant that is itself a defendant in a medical malpractice action.
¶ 16 The Riddles argue, however, that the policies relied upon in Duquette for barring ex parte communications between defense counsel and treating physicians also exist when those physicians are hospital employees. We disagree. The policies discussed in Duquette served to control the information available to defense counsel from the implied waiver of the physician-patient privilege. The information at issue here does not flow from the implied waiver, but from the employer-employee relationship itself. The relationship gives rise to obligations of the employees to the employer that are not present when the treating physician is not an employee, and equally impose obligations on the employer to the patients and employees. Because the employer is inextricably involved in the relationship between an employed physician and a patient, we cannot conclude that public policy creates a wall between the employees and their employer regarding that patient.
¶ 17 Nor do we believe this rule violates the settled expectations of the patient. Duquette noted that "the public has a widespread belief that information given to a physician in confidence will not be disclosed to third parties absent legal compulsion." 161 Ariz. at 275, 778 P.2d at 640. We cannot conclude that the public has the same belief with regard to a physician employed by a hospital where the patient has gone for treatment.
¶ 18 The Riddles also argue the physician-patient relationship should not allow communications whose purpose is to minimize their claims against the hospital. They admit that Alesha's physicians may communicate with other hospital employees, but argue such communications are only allowed if *422 they are in "furtherance" of Alesha's care. We agree that the physician-patient privilege may limit what a physician can disclose to fellow employees about a patient if there is no reason for the other employee to know the information. Because the employer-hospital may be vicariously liable for disclosures that violate the privilege, it certainly has an interest in making sure its employees are well-informed about the limits on such disclosures. Nevertheless, we do not read the limits as broadly as do the Riddles. Their view of treatment would exclude any hospital activity not directly engaged in treatment. This could include billing, quality control, risk management, peer reviews, and, indeed, legal services. These are each normal functions ancillary to providing patient care. Given the general rule that knowledge of an employee is imputed to the employer, we cannot read the physician-patient privilege as barring an employee from communicating with his or her employer regarding those functions.
¶ 19 We are not holding that the physician-patient privilege cannot in some circumstances limit communications within an organization, or that a trial court cannot in appropriate circumstances craft protective orders that prevent the use of privileged information that is irrelevant to the dispute at hand. In Bain, our supreme court found that the implied waiver "only extends to privileged communications concerning the specific condition which has been voluntarily placed at issue by the privilege holder." 148 Ariz. at 335, 714 P.2d at 828. In that case, the court found the implied waiver did not extend to marriage counseling records when the subject of the lawsuit was back surgery. A similar situation could arise when a patient receives services from different employees or departments of a hospital or other corporate medical provider. In the present case, however, there is no assertion that the testimony sought from treating physicians employed by PCH is not relevant to the injuries at issue in the lawsuit.
¶ 20 Because we find that Duquette does not apply based on the employer-employee relationship between PCH and the treating physicians, we need not address the scope of any attorney-client privilege between the employees and PCH's counsel. We note, however, that the privilege does not relieve an employee "of a duty to disclose the facts solely because they have been communicated to an attorney." A.R.S. § 12-2234(C) (2003). We further express no opinion regarding a trial court's authority to address ex parte communications with an employee that improperly influence an employee's later testimony. There is no assertion of such improper conduct in this case.

CONCLUSION
¶ 21 For these reasons, we find that Duquette does not apply to prevent PCH or its counsel from communicating with its employees who are or were Alesha's treating physicians. Because Duquette does not apply, the order requiring Dr. Pearl to have separate counsel was not supported by the law.
¶ 22 Therefore, we accept jurisdiction of PCH's special action and grant relief by vacating the trial court's orders dated January 8, 2010 and June 3, 2011.
CONCURRING: DONN KESSLER and PHILIP HALL, Judges.
NOTES
[1] Courts in other states have reached conflicting conclusions regarding this issue. Compare Lee Mem'l Health Sys. v. Smith, 40 So.3d 106, 107 (Fla.App.2010) (holding communications between physicians and hospital were permissible) with Aylward v. Settecase, 409 Ill.App.3d 831, 350 Ill.Dec. 489, 948 N.E.2d 769, 774 (2011) (holding clinic could not engage in ex parte communications with employees whose conduct is not at issue in lawsuit); see generally Daniel P. Jones, Discovery: Right to Ex Parte Interview with Injured Party's Treating Physician, 50 A.L.R.4th 714 (1986). An Arizona federal court has applied Duquette to bar ex parte communications between defense counsel and a hospital employee, but that decision relied on Duquette as controlling state law without separate analysis of the employed physician issue. See Benally v. United States, 216 F.R.D. 478 (D.Ariz.2003).
[2] Some of the treating physicians employed by PCH also treated Alesha when they were not PCH employees. PCH acknowledges in its brief, and we agree, that "employment with PCH would not allow access to privileged information concerning events that occurred before the provider was an employee."