IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2014 Session

CHERYL HALL, SURVIVING SPOUSE AND NEXT OF KIN OF MARK
LAMAR HALL, JR., DECEASED
v.
JAMES H. CRENSHAW, M.D., THE JACKSON CLINIC
PROFESSIONAL ASSOCIATION, KEITH ADKINS, M.D., S.
PATRICK WHALEN, VANDERBILT HEART AND VASCULAR
INSTITUTE, VANDERBILT SCHOOL OF MEDICINE,
VANDERBILT UNIVERSITY a/k/a VANDERBILT UNIVERSITY
MEDICAL CENTER

Appeal from the Circuit Court of Madison County
No. C-11-134   Donald H. Allen, Judge

No. W2013-00662-COA-R9-CV - Filed July 18, 2014

This interlocutory appeal involves *ex parte* communications between defense counsel for a defendant medical entity and non-party physicians who treated the plaintiff's decedent and are employed by the defendant medical entity. The plaintiff filed this healthcare liability action against the defendant medical entity arising out of treatment of the plaintiff's decedent. The trial court held that the attorneys for the defendant medical entity are barred under *Alsip v. Johnson City Medical Center*, 197 S.W.3d 722 (Tenn. 2006), from conferring *ex parte* with treating physicians employed by the defendant medical entity who are not named as defendants in the lawsuit. The defendant medical entity was granted permission for this interlocutory appeal. We hold that the defendant medical entity has an independent right to communicate privately with its employees, and this right is not abrogated by the filing of the plaintiff's healthcare liability lawsuit. Therefore, *Alsip* does not bar the medical entity's attorneys from communicating *ex parte* with physicians employed by the medical entity about the physician employee's medical treatment of the plaintiff's decedent. Accordingly, we reverse.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, J., and JOHN EVERETT WILLIAMS, SP. J., joined.

Marty R. Phillips and Ashley D. Cleek, Jackson, Tennessee, for Defendant/Appellants James H. Crenshaw, M.D. and The Jackson Clinic Professional Association

Lee J. Chase, Memphis, Tennessee, for Plaintiff/Appellee Cheryl Hall, surviving spouse of Mark Emmett Lamar Hall, Jr.

## OPINION

### FACTS AND PROCEEDINGS BELOW

The facts pertinent to this appeal are undisputed. The decedent in this lawsuit, Mark Emmett Hall, Jr., was treated by healthcare professionals associated with Defendant/Appellant The Jackson Clinic Professional Association ("Jackson Clinic"), a Tennessee for-profit corporation located in Jackson, Tennessee, and by healthcare professionals associated with Vanderbilt University in Nashville, Tennessee. Mr. Hall died on February 23, 2010.

In May 2011, Mr. Hall's wife, Plaintiff/Appellee Cheryl Hall filed a healthcare liability action in the Circuit Court of Madison County, Tennessee, against several defendant healthcare providers, alleging the wrongful death of her husband. Among the defendants named in the lawsuit are the Jackson Clinic and Defendant/Appellant James H. Crenshaw, M.D., a physician with the Jackson Clinic.[1]

The complaint alleges: "The Defendants, physicians and their employers, under the doctrine of respondeat superior and/or ostensible or apparent agency or agency in general and/or as owners, agents, servants or employees, officers or directors, owed a duty of care to Mr. Hall" and that "Defendants, physicians and their employees . . . deviated from the recognized standard of professional practice. . . ." As to the Jackson Clinic, the complaint alleged:

> The Jackson Clinic, Professional Association (a Tennessee for-profit corporation) provides medical physician services to its patients through its principals, owners, employees, servants, agents and/or contractors, including

---

[1]Vanderbilt University and some healthcare providers associated with Vanderbilt are also named in the lawsuit, but the claims against them are not at issue in this appeal.

Dr. Crenshaw, who was at all times relevant hereto acting within the course and scope of his employment and as its agent, servant and employee under the doctrine of *respondent superior* and under the doctrine of apparent authority, and/or agency. Therefore, The Jackson Clinic is vicariously liable for the medical negligence of Dr. Crenshaw in regard to his care and treatment of his patient, Mark Emmett Lamar Hall, Jr.

Jackson Clinic retained the law firm Rainey, Kizer, Reviere & Bell, P.L.C. ("Rainey Kizer") to represent its interests in the lawsuit. Discovery ensued.

In the course of discovery, Hall noticed the depositions of Jason Cherry, M.D., a Jackson Clinic cardiologist who practices with Dr. Crenshaw, and William Mariencheck, M.D., a Jackson Clinic pulmonologist and critical care specialist. Neither were named as a defendant in the lawsuit, but both treated the decedent during the pertinent time frame. Drs. Cherry and Mariencheck are shareholders and employees of the Jackson Clinic.

In short order, Rainey Kizer filed a motion asking the trial court for permission to meet *ex parte* with Drs. Cherry and Mariencheck to discuss matters relevant to the case, including their treatment of the decedent. Specifically, Rainey Kizer wanted to meet *ex parte* with the two physicians prior to their depositions. The motion argued that Rainey Kizer, as the attorneys for the Jackson Clinic, had an obligation to investigate before engaging in discovery and that the Jackson Clinic would be "unfairly oppressed and burdened" by having to engage in discovery without giving its attorneys the opportunity for such *ex parte* communication with Drs. Cherry and Mariencheck. Hall objected, so the trial court scheduled a hearing to resolve the dispute.

Prior to the hearing, in support of the motion, counsel for Jackson Clinic filed affidavits by Drs. Cherry and Mariencheck. Both said that they wanted Rainey Kizer to represent them in the lawsuit, and that they specifically wanted the law firm to represent them in the upcoming depositions. Each affidavit said: "I am currently a partner/shareholder in Defendant Jackson Clinic P.A. and was also a partner/shareholder in Defendant Jackson Clinic, P.A. in 2010 when I provided medical care to Mark Emmett Hall, Jr. Any knowledge I have pertaining to Plaintiff Mark Emmett Hall, Jr. or his medical care was obtained while I was acting in my capacity as a physician and partner/shareholder in Defendant Jackson Clinic, P.A. "

On December 20, 2012, the trial court held a hearing on this issue; the record does not indicate what transpired at this hearing. Following the hearing, the trial court entered an order denying the Jackson Clinic's motion for permission to communicate *ex parte* with Drs. Cherry and Mariencheck. The trial court reasoned that the two physicians are not individually named as defendants, so they should be considered non-party treating physicians. Relying

on *Alsip v. Johnson Medical Center*, 197 S.W.3d 722 (Tenn. 2006), the trial court denied Rainey Kizer permission to have *ex parte* communications with them. The trial court added that Drs. Mariencheck and Cherry could choose to have Rainey Kizer represent them at the depositions, "if counsel believes it would be ethically permissible to do so." Regardless, the trial court held, the Rainey Kizer attorneys may not communicate *ex parte* "with the 'nonparty treating physicians' since they are not individually named parties to this lawsuit."

Jackson Clinic filed a motion for permission to file an interlocutory appeal of the trial court's ruling pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Jackson Clinic attached to the motion supplemental affidavits from Drs. Cherry and Mariencheck. Each affidavit stated: "I . . . do hereby testify that in addition to being a partner and shareholder of the Jackson Clinic Professional Association, I am also an employee of the clinic." Both the trial court and the appellate court granted permission for this appeal.

## ISSUE ON APPEAL AND STANDARD OF REVIEW

In this interlocutory appeal, Jackson Clinic presents the following issue:

> Does Tennessee's implied covenant of confidentiality prohibit the attorneys for the Jackson Clinic P.A. from speaking with the Clinic's own physicians/owners/employees about the decedent and his medical treatment when the Plaintiff is suing the Clinic (via its physicians/owners/employees) for alleged medical malpractice?

The issue involves the application of law to undisputed facts. Consequently, the standard of review is *de novo;* we accord no deference to the trial court's ruling. *Alsip v. Johnson City Medical Center,* 197 S.W.3d 722, 725 (Tenn. 2006); *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628-29 (Tenn. 1999).

## ANALYSIS

On appeal, Jackson Clinic gives numerous reasons for its contention that the trial court's ruling is erroneous. First, it asserts that the trial court erred in relying on *Alsip* and its predecessor, *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 407-08 (Tenn. 2002). *Alsip* and *Givens*, it contends, "simply involved the manner of obtaining information from non-interested third parties." In contrast, in the case at bar, shareholder/employees must be prepared for depositions in a lawsuit in which the Clinic, in which they have an ownership interest, is sued. Jackson Clinic contends that prohibiting its counsel from talking with its own employee agents to prepare for depositions is tantamount to denying the Jackson Clinic effective representation.

Jackson Clinic insists that the implied covenant of confidentiality does not apply in this case. It argues that, because Drs. Cherry and Mariencheck are agents/owners/employees of the Clinic, the knowledge they obtained while acting within the scope of their employment is already imputed to the Clinic, and the Clinic is already deemed to know any confidential information they know. Therefore, Jackson Clinic contends, if the Rainey Kizer attorneys spoke to the physicians, there would be no breach of the implied covenant of confidentiality because no new information would be shared.

Jackson Clinic also argues policy considerations. It notes that the implied covenant of confidentiality is intended to protect private and potentially embarrassing information. Since the Rainey Kizer attorneys are already privy to the Jackson Clinic medical records and other confidential information, the Jackson Clinic maintains, the patient's privacy interests would not be harmed by permitting the Rainey Kizer attorneys to meet *ex parte* with Drs. Cherry and Mariencheck. Forcing Drs. Cherry and Mariencheck to hire separate attorneys to represent them would only result in further dissemination of the patient's private information and so would be counter to the policy concerns that underlie the implied covenant of confidentiality.

In response, Hall insists that Tennessee statutes and caselaw prohibit the Rainey Kizer attorneys from engaging in *ex parte* communications with Drs. Cherry and Mariencheck. Because other means of discovery are available and will provide the same information, Hall contends, the trial court correctly limited defense counsel's communications and representation of Drs. Cherry and Mariencheck to their formal depositions. In addition to *Givens* and *Alsip*, Hall also cites *Overstreet v. TRW Commercial Steering Division, et al.*, 256 S.W.3d 626, 633-34 (Tenn. 2008), a worker's compensation case, as demonstrating the need to limit the attorneys' discussions with a plaintiff's treating physician to formal discovery. Hall notes that the plaintiff in this case has not alleged that the Jackson Clinic should be held liable for the actions of either Dr. Cherry or Dr. Mariencheck, and consequently maintains that the treating physicians' status as shareholder employees of the named defendant medical group is irrelevant. Hall asserts that the knowledge of Drs. Cherry and Mariencheck cannot be imputed to the Jackson Clinic because "they are fact witnesses only and their conduct is not asserted to be a causative event of harm to the patient and would not lead to a claim against the legal entity with whom they might be associated."

A brief overview of Tennessee law regarding *ex parte* communications with health care providers is in order.[2] In 2002, the Tennessee Supreme Court rendered its decision in *Givens*

_____

[2] Our overview does not include an amendment to the pertinent statutes that does not apply in this case because the complaint was filed prior to the effective date of the amendment, July 1, 2012. After the

(continued...)

***v. Mullikin ex rel. Estate of McElwaney***, 75 S.W.3d 383 (Tenn. 2002). In that case, the plaintiff filed a lawsuit against an insurance company, asserting that an attorney, hired by the insurance company to defend one of its insured, committed several torts within the context of his representation, thereby rendering the defendant insurance company vicariously liable for the attorney's actions. ***Givens***, 75 S.W.3d at 390-91. The plaintiff alleged in part that the attorney induced her treating physician to breach an implied contract of confidentiality with her by speaking privately with the attorney outside of a formal discovery deposition. ***Id.*** at 392. In the course of its analysis, the ***Givens*** Court recognized an implied covenant of confidentiality as part of the contract of treatment between the healthcare provider and the patient:

> Any time a doctor undertakes the treatment of a patient, and the consensual relationship of physician and patient is established, two jural obligations (of significance here) are simultaneously assumed by the doctor. Doctor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated. As an implied condition of that contract, this Court is of the opinion that the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission . . . . Consequently, when a doctor breaches his duty of secrecy, he is in violation of part of his obligations under the contract.

***Id.*** at 407 (quoting ***Hammond v. Aetna Cas. & Sur. Co.***, 243 F. Supp. 793, 801 (N.D. Ohio 1965)). ***Givens*** acknowledged that the healthcare provider cannot withhold the patient's confidential medical information in the face of a subpoena or other lawful discovery request and held that there was no breach of the implied covenant from the healthcare provider's

---

[2](...continued)

Tennessee Supreme Court decided ***Givens*** and ***Alsip***, the General Assembly enacted Tennessee Code Annotated § 29-26-121(f). Referred to by legal scholars as "the Givens Fix," the statute permits defense counsel to petition the court for a protective order allowing defendants and their attorneys to obtain protected health information "during interviews, outside the presence of claimant or claimant's counsel" from plaintiff's treating health care providers as defined by Tennessee Code Annotated § 29-26-101. Tenn. Code Ann. § 29-26-121(f) (2013); Whitney Boshers Hayes, *Physician-Patient Confidentiality in Health Care Liability Actions: HIPAA's Preemption of Ex Parte Interviews with Treating Physicians Though the Obstacle Test*, 44 U. Mem. L. Rev. 97, 106-07 (Fall 2013). Subsection (3) of the statute says that the statute may not "be construed as restricting in any way the right of a defendant or defendant's counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a healthcare liability action," and so appears to assume the existence of such a right but does not expressly create it. Tenn. Code Ann. § 29-26-121(f)(3).

disclosure in response to such. *Id*. at 408. It sharply contrasted this, however, with a healthcare provider's private discussions with the attorney hired by the insurance company:

> A much different case is presented, however, with respect to whether the physician breached his implied covenant of confidentiality by informally speaking to [the insurance company's attorney] about the plaintiff's medical information. While the understanding of the parties giving rise to the implied covenant of confidentiality permits a physician to disclose information pursuant to subpoena or court order, this understanding does not include permission to divulge this information informally without the patient's consent. Therefore, absent circumstances giving rise to a duty to warn identifiable third persons against foreseeable risks emanating from a patient's illness, we hold that a physician breaches his or her implied covenant of confidentiality by divulging medical information, without the patient's consent, through informal conversations with others.

*Id*. at 408-09 (footnote and internal citation omitted). Thus, *Givens* held that the covenant of confidentiality implied in the agreement between the patient and the healthcare provider would be contravened by disclosure of the patient's private medical information in the context of a private conversation with a third party such as an attorney.

The holding in *Givens* was refined several years later in *Alsip v. Johnson City Medical Center*, 197 S.W.3d 722 (Tenn. 2006). In *Alsip*, a healthcare liability action, the trial court had entered a discovery order that specifically permitted *ex parte* communications between defense counsel and the decedent's non-party treating physicians; the plaintiffs were granted permission for an interlocutory appeal. *Alsip*, 197 S.W.3d at 723. The Court posed the question presented as whether public policy dictates "that the covenant of confidentiality contained in the contract between patient and physician be voided by the filing of a medical malpractice lawsuit with the consequence that a trial court may authorize defense counsel to communicate ex parte with non-party physicians who treated the plaintiff for injuries allegedly arising from the malpractice?" *Id.* at 727. It stated that the analysis required the Court "to balance society's legitimate desire for medical confidentiality against medical malpractice defendants' need for full disclosure of plaintiffs' relevant health information." *Id*.

The *Alsip* Court emphasized that medical confidentiality arose from both the patient's understanding of the covenant between physician and patient and the policy concerns about keeping private and potentially embarrassing information private, adding, "The relationship of patient to physician is a particularly intimate one [because] [t]o the physician we bare our bodies . . . in confidence that what is seen and heard will remain unknown to others." *Id*. at 726 (quoting *Cua v. Morrison*, 626 N.E.2d 581, 586 (Ind. Ct. App. 1993)). However, it

recognized that "public policy considerations reflected in the Tennessee Rules of Civil Procedure require that the covenant of physician-patient confidentiality be voided for the purpose of discovery," so that "the defendant can defend himself against civil liability." *Id.* at 726. Balancing the policy considerations, the Court held that the attorney for the defendant healthcare provider could learn all he needed to know by engaging in the discovery permitted under the Rules of Civil Procedure, and did not need to resort to *ex parte* communications with the plaintiffs' non-party treating physician in order to defend his client. *Id.* at 726-27 (quoting *Crist v. Moffatt*, 389 S.E.2d 41, 45 (N.C. 1990) (citing *Petrillo v. Syntex Lab., Inc.*, 499 N.E.2d 952, 963 (Ill. App. Ct. 1986); *Roosevelt Hotel Ltd. P'ship v. Sweeny*, 394 N.W.2d 353, 356 (Iowa 1986); *Anker v. Brodnitz*, 413 N.Y.S.2d 582, 585-86 (N.Y. App. Div. 1979))). It reasoned that since the plaintiffs' consent to disclose the patient's "confidential, relevant medical information was implied at law as a consequence of the plaintiffs' conduct (i.e., by the filing of the lawsuit), rather than done expressly (e.g., by written waiver), the scope of the plaintiffs' consent must be determined by the express terms of the Tennessee Rules of Civil Procedure, which do not prescribe ex parte communications." *Id*. at 728 (emphasis omitted). The Court concluded that *ex parte* communications between the patient's non-party treating physician and defense counsel violates the implied covenant of confidentiality referenced in *Givens*, even where the communications are countenanced by court order. *Id*. at 727-28. *See also* Whitney Boshers Hayes, *Physician-Patient Confidentiality in Health Care Liability Actions: HIPAA's Preemption of Ex Parte Interviews with Treating Physicians Though the Obstacle Test*, 44 U. Mem. L. Rev. 97, 104 (Fall 2013). Accordingly, it reversed the trial court's order permitting defense counsel to confer *ex parte* with the non-party treating physician.

As in *Alsip*, in this case, the healthcare providers with whom defense counsel seeks to confer *ex parte* are non-party treating physicians. In this case, however, the treating physicians are also shareholder employees of the named defendant Jackson Clinic. We must consider whether the rule set forth in *Alsip* holds under these circumstances. In our analysis, we focus on the status of Drs. Cherry and Mariencheck as employees of the Jackson Clinic.

Hall argues that, so long as the actions of Drs. Cherry or Mariencheck have not been asserted as a basis for liability against the Jackson Clinic, then those physicians are like any other non-party treating physician, and the attorneys for the Jackson Clinic should be barred from *ex parte* communications, under *Alsip.* At least one state with established caselaw similar to *Alsip* has agreed with Hall's position. In 1986, Illinois issued its decision in *Petrillo v. Syntex Laboratories, Inc*., 499 N.E.2d 952 (Ill. App. Ct. 1986), a case cited with approval in *Alsip*. *See Alsip*, 795 S.W.3d at 727. *Petrillo* held that defense counsel could not engage in *ex parte* communication with a plaintiff's treating physicians, in a case in which the physicians' conduct was not a basis for the defendants' liability. *Petrillo,* 499 N.E.2d at 965. *Petrillo* reasoned that "principles of public policy, obligations created by confidential and fiduciary relationships, and the ethical responsibilities of modern-day professionals"

prohibited such *ex parte* communications between defense counsel and a plaintiff's treating physician. *Petrillo*, 499 N.E.2d at 971. Years later, in *Aylward v. Settecase*, 948 N.E.2d 769 (Ill. App. Ct. 2011), the Illinois appellate court was asked to carve out an exception to *Petrillo* where, as here, the defendant physicians' group sought permission for its defense counsel to confer *ex parte* with one of the plaintiff's treating physicians, an employee of the defendant group whose actions were not asserted as a basis for liability. The *Aylward* Court declined to do so; it found that allowing such *ex parte* communications "would substantially erode the rationale underlying *Petrillo*." *Id.* at 774. It held that, "unless and until the actions of the [defendant physician group's] employees are alleged to be a basis for plaintiff's injuries, [the defendant physician group] cannot engage in ex parte communications with them." *Id*. *See also Kirkland v. Steven Siglove, M.D. and DuPage Medical Group, Ltd,* No. 11-C-7285, 2013 WL 707917, at *2-3 (N.D. Ill. Feb. 26, 2013) (applying *Aylward*), cited by Hall in this appeal.

Other states with caselaw similar to *Alsip*, also cited with approval in *Alsip*, have agreed with the position argued by the Jackson Clinic, that the fact that the treating physicians at issue in this case are employees of the defendant physician group is sufficient reason to permit defense counsel to confer *ex parte* with them. In *Duquette v. Superior Court*, cited with approval in *Alsip,* the Arizona appellate court held that defense counsel in a medical malpractice lawsuit may not engage in *ex parte* communications with the plaintiff's treating physician without the plaintiff's consent. *See Alsip*, 197 S.W.3d at 726, 728 (citing *Duquette v. Superior Court*, 778 P.2d 634, 640 (Ariz. Ct. App.1989)). Years later, the same court was asked to decide "if the ruling in *Duquette* bars communications between a defendant hospital and its counsel, and the hospital's own employees who provided treatment to the plaintiff." *Phoenix Children's Hosp., Inc. v. Grant*, 265 P.3d 417, 418 (Ariz. Ct. App. Div. 1, 2011). The *Phoenix Children's Hospital* Court recognized that courts addressing this issue have reached differing conclusions. *Id.* at 419 n.1 (citing cases). It noted that, under Arizona law, the knowledge of an employee is imputed to the corporation if it is acquired within the scope of his employment and is within his authority. *Id.* at 421. In light of this principle, the Arizona appellate court reasoned:

> The issue raised in this special action is different from *Duquette* because the implied waiver is not the source of [the defendant hospital's] authority to discuss [the plaintiff patient's] medical condition with her treating physicians. The treating physicians are employees of [the defendant hospital]. Their knowledge of [the plaintiff patient] exists because they are treating her as agents and employees of the hospital, and that knowledge is presumptively shared with their employer.
>
> * * *
>
> Applying these principles, a hospital's right to discuss a plaintiff/patient with its own employees exists because the employment relationship exists. That

-9-

right is not dependent on the implied waiver arising from the filing of the malpractice lawsuit. We see no reason why the filing of a lawsuit expands the physician-patient privilege to bar communications that are otherwise allowed. Therefore, we conclude that *Duquette* does not apply to treating physicians who are employees of a corporate defendant that is itself a defendant in a medical malpractice action.

*Id*. (internal footnote omitted). The plaintiff in *Phoenix Children's Hospital* argued that the patient still has a confidential relationship with her treating physicians, even if the physicians are employed by the defendant hospital, so the hospital's defense counsel should not be permitted to confer *ex parte* with her treating physicians without her consent. The Court rejected this argument:

> The policies discussed in *Duquette* served to control the information available to defense counsel from the implied waiver of the physician-patient privilege. The information at issue here does not flow from the implied waiver, but from the employer-employee relationship itself. The relationship gives rise to obligations of the employees to the employer that are not present when the treating physician is not an employee, and equally impose obligations on the employer to the patients and employees. Because the employer is inextricably involved in the relationship between an employed physician and a patient, we cannot conclude that public policy creates a wall between the employees and their employer regarding that patient.

*Id*. Thus, the Arizona appellate court in *Phoenix Children's Hospital* reasoned that the corporate defendant has an independent right to speak freely with its own employees, springing from the employer-employee relationship, and the fact that the plaintiff patient had filed a lawsuit does not serve to bar communications that are otherwise allowed. On this basis, it permitted the hospital's defense counsel to confer *ex parte* with treating physicians who were employees of the defendant hospital. *Id.* at 422.

The Florida appellate court reached the same conclusion, with similar reasoning, in *Estate of Stephens ex rel. Clark v. Galen Health Care, Inc.*, 911 So. 2d 277, 281-82 (Fla. Dist. Ct. App. 2005). In that case, the Court reasoned that there is no "disclosure" of confidential patient information when a hospital corporation talks with its employees about information obtained in the course of employment. *Id*. at 282. It explained:

> The corporate entities have no knowledge in and of themselves. They can act only through their employees and agents and should be able to speak to those employees to discuss a pending lawsuit. The [defendant corporate healthcare providers'] attorneys should also be able to speak with the [defendant

corporate healthcare providers'] employees and agents as the corporate entities are able to function only through them. Such communication would not be a disclosure in violation of doctor/patient privilege. . . .

***Id***. ***See also Wade v. Vabnick-Wener***, 922 F. Supp. 2d 679, 693 (W.D. Tenn. 2010), in which the federal district court, applying Tennessee law, relied on ***Estate of Stephens*** to predict that Tennessee courts, when faced with the question of whether to permit defense counsel for a medical group to confer *ex parte* with an employee who had treated the plaintiff patient, would permit such *ex parte* communications. ***Wade***, 922 F. Supp. 2d at 692-93. In addition, in ***Boula v. United States***, a federal district court applied North Carolina law to the issue of "whether an institutional defendant may only communicate with one of its employees who was not involved in the alleged medical malpractice through formal means of discovery." ***Boula v. United States,*** No. 1:11CV366, 2013 WL 5962935, at *5 (M.D.N.C. Nov. 7, 2013). The plaintiff in that case relied on the North Carolina decision in ***Crist v. Moffatt***, which was cited with approval in ***Alsip***. ***Boula,*** 2013 WL 5962935, at *4-5; ***Alsip***, 197 S.W.3d at 727 (citing ***Crist v. Moffatt,*** 389 S.E.2d 41 (N.C. 1990)). The federal district court in ***Boula*** held that North Carolina would not apply ***Crist*** to bar the defendant medical center's attorney from conferring *ex parte* with a physician employed by the medical center who treated the plaintiff, because "[t]he privacy and confidentiality concerns are substantially, if not completely, eliminated when the treating physician is employed by the defendant medical center." ***Boula,*** 2013 WL 5962935, at *5.

We are persuaded by the reasoning in the cases that permit counsel for a defendant medical entity to confer *ex parte* with non-party treating physicians who are employed by the defendant medical entity. Tennessee has long recognized that a corporation can function only through its agents and employees, that the acts of an employee may be attributed to the employer, and that the corporation's knowledge is acquired via its agents and employees. "A basic principle of agency is that a corporation can act only through the authorized acts of its corporate directors, officers, and other employees and agents. Thus, the acts of the corporation's agents are attributed to the corporation itself." ***Trau-Med of Am., Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691, 703 (Tenn. 2002). Any knowledge that Drs. Cherry and Mariencheck may have regarding the decedent's treatment was acquired in the course and scope of their employment and is already imputed to the Jackson Clinic. ***See Bland v. Allstate Ins. Co.,*** 944 S.W.2d 372, 376 (Tenn. Ct. App. 1996) ("Of course, the knowledge of an agent is imputed to his principal.") (citing ***Griffith Motors, Inc. v. Parker***, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982); ***Amer. General Life Ins. Co. v. Gilbert***, 595 S.W.2d 83, 87 (Tenn. Ct. App. 1979)). As noted in ***Phoenix Children's Hospital***, the Jackson Clinic has an independent right to discuss a patient with its own employee, separate and apart from the implied waiver that arises from the filing of the healthcare liability lawsuit. ***Phoenix Children's Hosp., Inc.***, 265 P.3d at 422. Like the Court in ***Phoenix Children's Hospital***,

we "see no reason why the filing of a lawsuit . . . [would] bar communications that are otherwise allowed." *Id.* at 421.

We hold that neither *Alsip* nor *Givens* would bar counsel for the Jackson Clinic from conferring *ex parte* with Drs. Cherry and Mariencheck, since both are employees of the Jackson Clinic. In view of this holding, we need not address the effect, if any, of their status as shareholders in the Jackson Clinic. We must respectfully conclude that the trial court erred in declining to permit *ex parte* communications between defense counsel for the Jackson Clinic and Drs. Cherry and Mariencheck. All other issues raised on appeal are pretermitted by this decision

Accordingly, we reverse the trial court's order and remand for further proceedings consistent with this Opinion.

## CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed against Plaintiff/Appellee Cheryl Hall, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE