# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 12, 2014 Session

## ALETHEA DEAN-HAYSLETT, AS SURVIVING WIDOW OF JERRY HAYSLETT v. METHODIST HEALTHCARE, ET AL.

### Appeal from the Circuit Court for Shelby County
### No. CT00475412    Robert L. Childers, Judge

---

### No. W2014-00625-COA-R10-CV - Filed January 20, 2015

---

This is a healthcare liability action. The trial court granted Defendants' joint motion for a qualified protective order pursuant to Tennessee Code Annotated § 29-26-121(f)(1), but added several conditions not specifically provided in the statute. The trial court denied Defendants' joint motion for permission to seek an interlocutory appeal, and we granted Defendants' motion for an extraordinary appeal to this Court under Rule 10 of the Tennessee Rules of Appellate Procedure. We reverse in part, affirm in part, and remand for further proceedings.

### Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Reversed in Part; Affirmed in Part; and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J. joined. J. STEVEN STAFFORD P.J.,W.S. filed a concurring opinion.

Mason Wilson and Julia Kavanagh, Memphis, Tennessee, for the appellant, Methodist Healthcare-Memphis Hospitals.

Katherine M. Anderson and W. Bradley Gilmer, Memphis, Tennessee, for the appellant, Mohamad Moughrabieh, M.D.

Mimi Phillips, Memphis, Tennessee, for the appellee, Alethea Dean-Hayslett.

## OPINION

The is an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. In November 2012, Plaintiff/Appellee Alethea Dean-Hayslett ("Mrs.

Hayslett") filed a complaint for damages for wrongful death, healthcare liability, and ordinary negligence in the Circuit Court for Shelby County.[1]  In her complaint, Mrs. Hayslett asserted that Defendants, Methodist Healthcare d/b/a Methodist Hospital North, Methodist Healthcare Memphis Hospitals (collectively, "Methodist Hospital") and Mohamad Moughrabieh, M. D. ("Dr. Moughrabieh"; collectively, "Defendants"), committed acts of ordinary negligence and professional negligence that proximately caused the death of her husband, Jerry Hayslett ("Mr. Hayslett"),  in July 2011.  As required by Tennessee Code Annotated § 29-26-121(b), Mrs. Hayslett stated in her complaint that she had complied with the pre-suit notice requirements contained in section 29-26-121(a).  She prayed for wrongful death compensatory damages in the amount of $2,000,000.00 and damages for loss of consortium on behalf of herself and her children in the total amount of $4,000,000.00.

Defendants filed motions to dismiss or, in the alternative, for summary judgment in December 2012.  In their motions, Defendants asserted that Mrs. Hayslett failed to comply with the mandatory requirements of section 29-26-121 because she failed to provide a medical authorization sufficient to comply with the Heath Insurance Portability and Accountability Act ("HIPAA") as mandated by section 29-26-121(a)(1)(E).  Defendants asserted that Mrs. Hayslett's medical authorization authorized them to release Mr. Hayslett's medical records, but not to obtain them from other parties.  Defendants also moved for dismissal of Mrs. Hayslett's complaint as time-barred by the statute of limitations where, because her medical authorization failed to fulfill the requirements of subsection 121(a), the extension to the limitations period granted by subsection 121(c) did not operate to extend the limitations period in this case.  Mrs. Hayslett responded in opposition to Defendants' motions, and the trial court heard the motions in March 2013.  By order entered March 27, 2013, the trial court denied Defendants' motions, finding that Mrs. Hayslett's medical authorizations were HIPAA-compliant.  Pursuant to these authorizations, Defendants were authorized to release to each other all of Mr. Hayslett's relevant medical records, which consisted only of records generated by Methodist Hospital.  Defendants answered in April 2013, generally denying allegations of negligence and asserting several affirmative defenses, including the statute of limitations with respect to Mrs. Hayslett's claims for ordinary negligence and loss of consortium.

In May 2013, Defendants filed a joint motion for a qualified protective order pursuant

---

[1]Mrs. Hayslett amended her complaint in March 2013 to designate the Methodist Defendant as "Methodist Healthcare Memphis Hospitals d/b/a Methodist Hospital North."  She voluntarily nonsuited Methodist Healthcare to the extent that it was a legal entity distinct from Methodist Healthcare Memphis Hospitals. On March 27, 2013, the trial court entered an order dismissing Methodist Healthcare, a Tennessee Corporation.  The remaining Defendants are Methodist Healthcare Memphis Hospitals, a Tennessee Corporation, d/b/a Methodist Hospital North and Mohamad Moughrabieh, M.D.

to Tennessee Code Annotated § 29-26-121. In their motion, Defendants sought to conduct *ex parte* interviews with five of Mr. Hayslett's treating physicians outside the presence of Mrs. Hayslett and her counsel. In her response, Mrs. Hayslett opposed the motion on the grounds that section 29-26-121(f) is unconstitutional where it impairs the contractual obligation of confidentiality in violation of Article I, Section 20 of the Tennessee Constitution; that it violates and is preempted by HIPAA; and that the section impermissibly restricts the trial court's discretion when drafting the qualified protective order. The State of Tennessee filed a motion to intervene to defend the constitutionality of the section, and the trial court granted the State's motion in August 2013.

Following supplemental briefing by the parties, the trial court heard Defendants' motion for a qualified protective order in May 2013. By order entered November 15, 2013, the trial court determined that HIPAA does not preempt Tennessee Code Annotated § 29-26-121(f) and that the section does not violate Article 1, Section 20 of the Tennessee Constitution. The trial court also determined that section 29-26-121(f) does not violate the separation of powers doctrine by improperly infringing upon the discretion of the judiciary or by exceeding the boundaries of the legislature's authority. The trial court determined that section 29-26-121(f)(1) is a "procedural requirement" and a "proper exercise of the legislature's police power." The trial court further determined that, pursuant to Rule 26.02 of the Tennessee Rules of Civil Procedure, it retained the courts' broad discretionary powers to fashion a discovery order containing conditions to address a plaintiff's concerns.

In November 2013, the trial court accordingly granted Defendants' motion for a qualified protective order permitting Defendants to conduct *ex parte* interviews with five of Mr. Hayslett's treating physicians. The trial court imposed nine conditions on the order, however, including:

1. Participation in the *ex parte* interview by the treating physicians/caregivers is strictly voluntary. Nothing in this Order is intended to imply that the treating physicians/caregivers are required to participate in the *ex parte* interview.

2. All Protected Health Information obtained during the *ex parte* interview shall be used only in conjunction with this particular lawsuit and shall not be disseminated to any third parties other than the defense attorneys' staff members, vendors, clients, and experts.

3. All Protected Health Information obtained during the *ex parte* interview shall be destroyed at the conclusion of this lawsuit.

4. Defense attorneys may conduct no *ex parte* interview with treating

physicians/caregivers until February 1, 2014.

5. A court reporter must be present at the *ex parte* interview and record all questions and answers during the interview.

6. The answers during the interview must be given under oath.

7. Only one attorney for each named defendant may be present for the interview.

8. No defendant party may be present during the interview.

9. The interview transcripts shall be filed under seal. With permission from the Court, the plaintiff may access the transcripts for the purpose of determining whether a violation of privacy under HIPAA occurred during the interview.

Defendants and Mrs. Hayslett filed motions for permission to seek an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Following a hearing on January 24, 2014, the trial court denied the parties' motions. On February 27, 2014, the trial court entered an order modifying the conditions of the qualified protective order to provide:

1. Participation in the *ex parte* interview by the treating physicians/caregivers is strictly voluntary. Nothing in this Order is intended to imply that the treating physicians/caregivers are required to participate in the *ex parte* interview.

2. Relevant Protected Health Information may be elicited directly or indirectly from a healthcare provider during the *ex parte* interview. Defendants should not attempt to elicit or discuss Protected Health Information which is not relevant to the issues in this lawsuit. This does not restrict the Defendants or their attorneys from discussing non-substantive matters unrelated to the patient's Protected Health Information.

3. All Protected Health Information obtained during the *ex parte* interview shall be used only in conjunction with this particular lawsuit and shall not be disseminated to any third parties other than the defense attorneys' staff members, vendors, clients, and experts.

4. All Protected Health Information obtained during the *ex parte* interview shall be destroyed at the conclusion of this lawsuit.

5. Defense attorneys may conduct no *ex parte* interview with treating physicians/caregivers until March 1, 2014.

6. A court reporter must be present at the *ex parte* interview and record all questions and answers during the interview.

7. The answers during the interview must be given under oath.

8. The interview transcript shall be filed under seal. With permission from the Court and after showing good cause, the plaintiff may access the transcripts for the purpose of determining whether a violation of privacy under HIPAA occurred during the interview.[2]

Defendants filed a joint application for an extraordinary appeal to this Court pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. We granted limited review by order entered May 13, 2014.

## Issue Presented

The issue for which we granted review in this matter is:
Whether the trial judge has the authority to add the following conditions to a Qualified Protective Order granted pursuant to Tennessee Code Annotated § 29-26-121(f):

> 1. A court reporter must be present at the *ex-parte* interview and record all questions and answers during the *ex-parte* interview;
>
> 2. All answers during the interview must be under oath;
>
> 3. The interview transcript shall be filed under seal. With permission of the Court, and after showing good cause, Plaintiff may access the transcript for the purpose of determining whether a violation of privacy under HIPAA occurred during the interview; and,
>
> 4. Relevant Protected Health Information may be elicited directly or indirectly from a healthcare provider during the *ex*

---

[2]Conditions re-numbered from the trial court's order for clarity.

*parte* interview. Defendants should not attempt to elicit or discuss Protected Health Information which is not relevant to the issues in this lawsuit. This does not restrict the Defendants or their attorneys from discussing non-substantive matters unrelated to the patient's Protected Health Information.

## Standard of Review

Mrs. Hayslett submits that, although the trial court based its rationale for imposing conditions on the qualified protective order in this case on its interpretation of section 29-26-121(f)(1), the issue presented by this appeal is a discovery matter and the abuse of discretion standard of review accordingly is applicable. Defendants, on the other hand, contend that the issue is one of statutory construction and that the applicable standard of review accordingly is *de novo*, with no presumption of correctness afforded to the determination of the trial court. We agree with Defendants that this appeal requires us to determine, as an initial matter, whether, under section 29-26-121(f)(1), the trial court had the authority to restrict or condition the qualified protective order as it did in this case. Construction of a statute is a question of law. *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 516 (Tenn. 2014). Our review accordingly is *de novo*, with no presumption of correctness afforded to the decision of the trial court. *Id.* at 517.

## Discussion

It is well-settled that our duty when construing a statute is to ascertain and effectuate the intent and purpose of the General Assembly, neither broadening the statute beyond its intended scope nor unduly restricting it. *Id.*; *Commissioners of Powell-Clinch Utility Dist. v. Utility Mgmt. Review Bd.*, 427 S.W.3d 375, 384 (Tenn. Ct. App. 2013) (citation omitted). We interpret a statutory section reasonably in light of the context of the entire statute, construing it according to the natural, ordinary meaning of the language chosen by the legislature and in a "manner which avoids statutory conflict and provides for harmonious operation of the laws." *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013).

We begin our analysis with the words used in the statute and "[i]f the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without a forced interpretation[.]" *Id.* (citation omitted). If the statutory language is ambiguous, or if we must resolve a conflict between provisions, we may take other matters into consideration, including relevant historical facts, the entire statutory scheme, the legislative history, earlier versions of the statute, and public policy. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527-28 (Tenn. 2010). Such "non-codified external sources[,]" however, "cannot provide a basis for departing from clear codified statutory

provisions[,]" regardless of "how illuminating [they] may be[.]" *Id.* at 528. Although we presume every word or phrase has effect and that the General Assembly chose each word purposely and deliberately, we cannot base our construction on any single word. *Id.* at 527 (citations omitted). We also presume that the legislators were aware of the existing law and the courts' construction of prior statutes, and that they "'did not intend an absurdity'" when enacting the statute. *Id.* (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

Because the current action was commenced after July 1, 2012, and prior to July 1, 2013, the 2012 version of Tennessee Code Annotated § 29-26-121(f) is applicable to this lawsuit.[3] Section 29-26-121(f) as it existed in November 2012 provided:

(1) Upon the filing of any "healthcare liability action," as defined in § 29-26-101, the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101. Such petition shall be granted under the following conditions:

(A) The petition must identify the treating healthcare provider or providers for whom the defendant or defendants seek a qualified protective order to conduct an interview;

(B) The claimant may file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or defendants' counsel from conducting the interviews, which may be granted only upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure; and

---

[3]Section 29-29-121(f)(1)(C) was amended in 2013 to provide:

(C)(i) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court and require the defendant or defendants who conducted the interview to return to the healthcare provider or destroy any protected health information obtained in the course of any such interview, including all copies, at the end of the litigation;
(ii) The qualified protective order shall expressly provide that participation in any such interview by a treating healthcare provider is voluntary.

Tenn. Code Ann. § 29-26-121(f)(1)(C) (Supp. 2014).

(C) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court.

(2) Any disclosure of protected health information by a healthcare provider in response to a court order under this section shall be deemed a permissible disclosure under Tennessee law, any Tennessee statute or rule of common law notwithstanding.

(3) Nothing in this part shall be construed as restricting in any way the right of a defendant or defendant's counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a healthcare liability action.

Tenn. Code Ann. § 29-26-121(f) (2012).

As noted above, the issue in this case is the extent to which a trial court may limit or restrict *ex parte* interviews in a qualified protective order granted pursuant to the section. In light of the well-settled principle that trial courts have broad discretionary authority to control the proceedings in their courts, *Barnett v. Tenn. Orthopaedic Alliance*, 391 S.W.3d 74, 79 (Tenn. Ct. App. 2012), the section's mandatory provision that a defendant's motion for a qualified protective order "shall be granted" subject to the conditions and limitations expressly stated in the section, and the section's silence with respect to whether a trial court may impose additional restrictions or conditions, we find the section is ambiguous with respect to the extent of the trial court's authority to impose limitations or restrictions when granting orders under the section. Accordingly, we first turn to the "non-codified external sources" noted above to determine the legislative intent of section 29-26-121(f)(1) with respect to the scope of the trial court's authority when fashioning a qualified protective order under it.

### *Historical Background*

Section 29-26-121(f), which became effective in July 2012, is the legislature's response to the courts' increasing protection of confidential healthcare information. In turn, the judicial emphasis on the implied contract of confidentiality between a patient and his healthcare providers reflects the courts' interpretation of statutes enacted by the legislature from 1997 to 2001, statutes that the Tennessee Supreme Court construed as "indicative of the General Assembly's desire to keep confidential a patient's medical records and identifying information[.]" *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 726 (Tenn.

2006) (citing *Givens v. Mullikin*, 75 S.W.3d 383, 407 (Tenn. 2002) (citing Tenn. Code Ann. §§ 63-2-101(b)(1) (1997), 68-11-1502 (2001), 68-11-1503 (2001))). As early as 1965, the supreme court recognized the possibility of an implied contract of confidentiality between a patient and his physician. *Quarles v. Sutherland*, 389 S.W.2d 249, 252 (Tenn. 1965). In *Quarles,* the court declined to recognize a physician-patient privilege in contravention of the common law where the "Legislature ha[d] not seen fit to act on the matter[.]" *Id.* at 251. The *Quarles* court noted however, "that physicians and surgeons are required by the ethics of their profession to preserve the secrets of their patients which have been communicated to them or learned from symptoms or examination of other bodily conditions[,]" and recognized a "possible sounding of [a] lawsuit . . . under allegations that there was an implied contract between the parties[,]" a patient and his physician. *Id.* at 251-52.

Subsequent to the supreme court's observations in *Quarles*, in the 1990s the General Assembly enacted a number of statutes expressly requiring healthcare providers to keep their patients' medical records and identifying information confidential. In 1996, the General Assembly amended Tennessee Code Annotated § 63-2-101 to provide that "medical records shall not constitute public records, and nothing contained in [the] part shall be deemed to impair any privilege of confidentiality conferred by law on patients, their personal representatives or heirs." Tenn. Code Ann. § 63-2-101 (b)(1) (1997); 1996 Tenn. Pub. Acts 862. The 1996 amendment further provided:

> Except for any statutorily required reporting to health or government authorities and except for access by an interested third-party payer (or their designee) for the purpose of utilization reviews, case management, peer reviews or other administrative functions, the name and address and other identifying information of a patient shall not be divulged. The name and address and other identifying information shall not be sold for any purpose. Any violation of this provision shall be an invasion of the patient's right to privacy.

*Id.*[4] In 1996, the General Assembly also enacted the Patient's Privacy Protection Act. Tenn.

---

[4]The Tennessee Code currently provides:

(1)(A) Except as otherwise provided by law, such patient's medical records shall not constitute public records, and nothing contained in this part shall be deemed to impair any privilege of confidentiality conferred by law on patients, their personal representatives or heirs. Nothing in this subsection (b) shall impair or abridge the right of the patient or the patient's authorized representative to obtain copies of the patient's hospital records in the manner provided in § 68-11-304. Nothing in this subsection (b) shall be construed as prohibiting a patient's medical records from being subpoenaed by a court of competent

Code Ann. § 68-11-1501, *et. seq.*; 1996 Tenn. Pub. Acts 873. The act as currently codified provides, in relevant part, that patients have "the expectation of and right to privacy for" the care they receive at licensed facilities and in the confidentiality of their identifying information. Tenn. Code Ann. §§ 68-11-1502 & 1503(a) (2013). It also provides a right to a private civil action for damages for invasion of privacy for violations of the act. Tenn. Code Ann. § 68-11-1504 (2013).[5]

---

jurisdiction.

(B) As used in subdivision (b)(1)(A), "medical records" includes any list of patients that is compiled or maintained by or for such patient's health care provider.

(2) Except for any statutorily required reporting to health or government authorities and except for access by an interested third-party payer or their designee for the purpose of utilization review, case management, peer reviews or other administrative functions, the name and address and other identifying information of a patient shall not be divulged. The name and address and other identifying information shall not be sold for any purpose. Any violation of this subdivision (b)(2) shall be an invasion of the patient's right to privacy.

(3) Except as otherwise authorized in this section, title 38, chapter 7, part 1, title 68, chapter 11, part 3 and title 68, chapter 11, part 15, a health care provider shall have in place a policy to protect the dignity of a patient, even if the patient dies or becomes incapacitated, by limiting the use and disclosure of medical records, images, videos or pictures intended to be used for appropriate medical educational purposes, even if the patient's information is de-identified. The policy shall include when and to whom it is appropriate to use and disclose the patient's information, and when a written authorization from the patient or their authorized representative is required, whenever it is reasonably possible to obtain it, prior to use or disclosure. If the patient becomes incapacitated or dies, and there is no legal representative for the patient, the patient's next of kin will be considered to be an authorized representative for the patient. When required the written authorization will include the core elements required by 45 CFR Parts 160 and 164, "Standards for Privacy of Individually Identifiable Health Information."

Tenn. Code Ann. § 63-2-101(b).

[5]Current Tennessee Code Annotated § 68-11-1502 provides:

Every patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility.

Current Tennessee Code Annotated § 68-11-1503(a)(1) provides that a patient's name, address, and other identifying information shall not be divulged other than as excepted by the statute. Subsection (a)(2) requires healthcare providers to "have in place a policy to protect the dignity of a patient," and subsection (c) provides that violation of the section shall be considered "an invasion of the patient's right to privacy."

Notwithstanding physicians' well-established ethical obligations to keep their patients' confidences and to maintain their patients' privacy expectations, *ex parte* interviews of healthcare providers nevertheless were recognized "as a time-honored method of 'informal discovery.'" Angela T. Burnett and D'Andrea J. Morning, *HIPAA and Ex Parte Interviews - - The Beginning of the End?*, 1 J. Health & Life Sci. L. 73, 77 (April 2008). As the statutory protection of privacy expectations in the healthcare context evolved, however, accompanied by the courts' recognition of an implied covenant of confidentiality between patients and their healthcare providers, this informal investigatory practice increasingly was called into question by the courts. Indeed, scholars have observed that some courts questioned the practice of using *ex parte* interviews to illicit healthcare information "[l]ong before HIPAA[.]" *Id.* at 79.

In a federal case decided the same year as *Quarles*, in 1965 the court in *Hammonds v. Aetna Casualty & Surety Company* expressly recognized an implied covenant of confidentiality in the physician-patient contract and held that a physician's breach of the "warranty of silence" constituted a breach of his contractual obligations. *Hammonds v. Aetna Cas. & Sur. Co.*, 243 F. Supp. 793, 801 (N.D. Ohio 1965). The *Hammonds* court opined:

> Any time a doctor undertakes the treatment of a patient, and the consensual relationship of physician and patient is established, two jural obligations (of significance here) are simultaneously assumed by the doctor. Doctor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated. As an implied condition of that contract, this Court is of the opinion that the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission. Almost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath, and every patient has a right to rely upon this warranty of silence. The promise of secrecy is as much an express warranty as the advertisement of a commercial entrepreneur. Consequently, when a doctor breaches his duty of secrecy, he is in violation of part of his obligations under the contract.

*Id.* Noting our "adversary judicial system, with its intensity heightened by the continuing friction between insurance companies and claimants," the *Hammonds* court questioned the propriety of a "doctor discussing the case of his patient-plaintiff with the lawyer for the defending insurance company[,]" and concluded that "preservation of the patient's privacy is no mere ethical duty[,]" but "a legal duty as well." *Id.* at 798-802. It held that the "unauthorized revelation of medical secrets, or any confidential communication given in the course of treatment, is tortious conduct which may be the basis for an action in damages."

-11-

*Id.* at 802.

In *State ex rel. Kitzmiller v. Henning*, the West Virginia Supreme Court of Appeals held that, although a patient implicitly consents to the release of medical information with respect to the condition at issue in the lawsuit, that consent is limited. *Kitzmiller v. Henning*, 437 S.E.2d 452, 455 (W. VA. 1993). The *Kitzmiller* court opined that the patient "does not consent, simply by filing suit, to his physician's discussing his medical confidences with third parties outside court-authorized discovery methods, nor does he consent to his physician's discussing the patient's confidences in an *ex parte* conference with the patient's adversary." *Id.* (citing *see, Fields v. McNamara*, 189 Colo. 284, 540 P.2d 327 (Sup. Ct.1975); *Petrillo v. Syntex Laboratories*, Inc., 148 Ill. App.3d 581, 102 Ill. Dec. 172, 499 N.E.2d 952, 959 (1 Dist.1986); *Crist v. Moffatt*, 389 S.E.2d 41, 46 (N.C. 1990); *Ritter v. Rush–Presbyterian–St. Luke's*, 177 Ill. App.3d 313, 126 Ill. Dec. 642, 532 N.E.2d 327, 330 (1 Dist.1988); *Karsten v. McCray*, 157 Ill. App.3d 1, 109 Ill. Dec. 364, 509 N.E.2d 1376, 1383–84 (2 Dist.1987); *Jordan v. Sinai Hosp. of Detroit, Inc.*, 171 Mich. App. 328, 429 N.W.2d 891, 899 (1988); *Wenninger v. Muesing*, 307 Minn. 405, 240 N.W.2d 333, 335 (Sup. Ct. 1976); *Jaap v. District Court of Eighth Judicial Dist., Mont.*, 191 Mont. 319, 623 P.2d 1389, 1391 (1981)). It held that "*[e]x parte* interviews are prohibited because they pose the danger of disclosing irrelevant medical information that may compromise the confidential nature of the doctor-patient relationship without advancing any legitimate object of discovery[,]" and that discovery could be obtained only as permitted by the West Virginia Rules of Civil Procedure. *Id.*

In 2002, the Tennessee Supreme Court observed in *Givens v. Mullikin ex rel. Estate of McElwaney* that, through acts of the General Assembly, "patients and physicians now clearly expect that the physician will keep the patient's information confidential, and this expectation arises at the time that the patient seeks treatment." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 407 (Tenn. 2002). The *Givens* court observed that it had recognized in *Quarles* the possibility that "an implied contract of confidentiality arose between a physician and a patient . . . when a patient compensates a physician in return for medical treatment." *Id.* Quoting *Hammonds* with approval, the *Givens* court explicitly recognized an implied covenant of confidentiality in a "contract of treatment for payment" between a patient and his physician. *Id.* Most significantly, the *Givens* court held that when a physician divulges confidential information in "informal conversations with others" without the patient's consent, the physician breaches the implied covenant of confidentiality. *Id.* at 409.

Observing that a physician's duty of confidentiality is subject to several statutory exceptions, the court noted that "no exception permits disclosure of medical information in private conversations without the patient's consent." *Id.* n.12. The *Givens* court accordingly

held that the implied covenant of confidentiality did not contain an "informal interview" exception. *Id.* It also opined that *dicta* in *Alessio v. Crook*, 633 S.W.2d 770, 780 (Tenn. Ct. App. 1982), permitting informal interviews of physicians without the consent of the patient, did not accurately reflect the law after enactment of Tennessee Code Annotated § 63-2-101 and the Patient's Right to Privacy Act. *Id.* n.13. The court noted, however, that, "whatever the terms of this implied covenant of confidentiality may be, a physician cannot withhold such information in the face of a subpoena or other request cloaked with the authority of the court" and that such a contract "[u]ndoubtedly . . . would be contrary to public policy as expressed in the rules governing pretrial discovery and in the relevant medical confidentiality statutes." *Id.* at 408 (citing *see* Tenn. Code Ann. § 63–2–101(b)(1) (1997); Tenn. Code Ann. § 68–11–304(a)(1) (2001); Tenn. Code Ann. § 68–11–1505 (2001)).[6]

Four years later, the supreme court clarified its decision in *Givens* and struck down a trial court's order permitting *ex parte* communication between a decedent's non-party treating physician and counsel for the defendant medical center in a medical malpractice action filed by decedent's mother and surviving children. *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 723-24 (Tenn. 2006). The *Alsip* court "announce[d] that such ex parte communications violate[d] the implied covenant of confidentiality that exists between physicians and patients[.]" *Id.* Noting that the implied covenant of confidentiality is not enforceable "when it offends public policy" and that it "can be voided when its enforcement would compromise the needs of society"[7] and "for the purpose of discovery" under Rule 26 of the Tennessee Rules of Civil Procedure, the *Alsip* court held that "the formal methods of discovery expressly authorized by Rule 26" were sufficient to reveal all relevant medical information to the defendants. *Id.* at 728. It opined that public policy concerns did not require "voidance" of the implied covenant of confidentiality and that "ex parte communications between the plaintiff's non-party physicians and defense attorneys [were] not allowed in the State of Tennessee." *Id.* at 724. Balancing "society's legitimate desire for medical confidentiality against medical malpractice defendants' need for full disclosure of

---

[6]The court additionally noted that the statutes did not alter the fact that Tennessee common law does not recognize a physician-patient testimonial privilege. *Id.* at n.10.

[7]The supreme court observed that the implied covenant of confidentiality "is voided" in circumstances where a patient's illness may present a foreseeable risk to others; where state law requires reporting of wounds or injuries resulting from deadly weapons or violence; in cases of suspected child abuse or sexual assault; or in instance of venereal disease in minors age thirteen and under. *Alsip*, 197 S.W.3d at 726 (citations omitted). We note that Tennessee Code Annotated § 38-1-101 was amended in 2012 to provide that the reporting provisions contained in subsection (a) of the section do not apply if the person seeking or receiving treatment is 18 years of age or older; objects to the release of identifying information to law enforcement officials; and is a victim of sexual assault or domestic abuse, unless the injuries are considered to be life threatening or inflicted by strangulation or a deadly weapon. Tenn. Code Ann. 38-1-101(d).

plaintiffs' relevant health information[,]" the *Alsip* court concluded that "[n]either the law nor public policy require[d] the plaintiff to bear the risk of disclosure of irrelevant confidential medical information in informal, private interviews with opposing counsel and non-party doctors." *Id.* at 727, 730. The court "agree[d] with numerous '[o]ther courts [that] concluded that formal discovery procedures enable defendants to reach all relevant information while simultaneously protecting the patient's privacy by ensuring supervision over the discovery process[.]'" *Id.* at 727 (quoting *Crist v. Moffatt*, 389 S.E.2d 41, 46 (N.C. 1990) (citing *Petrillo v. Syntex Lab., Inc.*, 499 N.E.2d 952, 963 (Ill. App. 1986); *Roosevelt Hotel Ltd. P'ship v. Sweeney*, 394 N.W.2d 353, 356 (Iowa 1986); *Anker v. Brodnitz*, 98 Misc.2d 148, 413 N.Y.S.2d 582, 585-86 (N. Y. Sup. Ct. 1979))). The supreme court extended its holdings in *Givens* and *Alsip* to actions filed pursuant to the Tennessee Workers' Compensation Act in *Overstreet v. TRW Commercial Steering Division, et al.*, 256 S.W.3d 626 (Tenn. 2008).

In 2008, the General Assembly amended the medical malpractice act contained in Chapter 26 of Title 29 by adding sections 121 and 122, which became applicable to all medical malpractice actions filed on or after October 1, 2008. Tenn. Code Ann. §§ 29-26-121 and 29-26-122 (Supp. 2011); 2008 Tenn. Pub. Acts. 919. Sub-section 29-26-121(f), which provides for qualified protective orders allowing defendants and their counsel to conduct *ex parte* interviews with plaintiffs' healthcare providers, became effective on July 1, 2012. 2012 Tenn. Pub. Acts 926. In 2013, subsection 121(f)(1)(C) was amended, effective July 1, 2013, to expressly provide that participation by a healthcare provider is voluntary.[8] Tenn. Code Ann. § 29-26-121(f) (2013); 2013 Tenn. Pub. Acts. 23.

### Section 29-26-121

Sometimes called "the *Givens* Fix," because it arose against the backdrop of *Givens* and a "reported . . . backlash of debate among defense lawyers[,]" Whitney Boshers Hayes, *Physician-Patient Confidentiality in Health Care Liability Actions: HIPAA's Preemption of Ex Parte Interviews with Treating Physicians Through the Obstacle Test*, 44 U. Mem. L.Rev. 97, 105 (Fall 2013)); Burnett, 1 J. Health & Life Sci. L. 73, 80, Tennessee Code Annotated § 29-26-121(f) effectively legislatively abrogated *Givens* and *Alsip* to the extent to which they barred *ex parte* interviews of a plaintiff's treating healthcare providers by defendants and defense counsel outside the discovery process. *See Hall v. Crenshaw*, No. W2014-0062-COA-R9-CV, 2014 WL 3555987, at *4 n.2 (Tenn. Ct. App. July 18, 2014) (citing Tenn. Code Ann. § 29-26-121(f) (2013); Hayes, 44 U. Mem. L.Rev. at 106-07). Subsection (f)(3) of the section, moreover, has been held to "assume the existence of . . . a right" of defense

---

[8] The 2012 amendments substituted "health care liability" for "medical malpractice." 2012 Pub. Acts 798.

counsel to conduct "'interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a healthcare liability action[.]'" *Hall*, 2014 WL 3555987, at *4 n.2 (quoting Tenn. Code Ann. § 29-26-121(f)(3)).[9]

Section 29-26-121(f) is not without its limiting provisions, however. Rather, the section reflects the General Assembly's re-balancing of a plaintiff's privacy interests and expectations in his healthcare information against the defendants' ability to obtain relevant protected information outside of the formal discovery procedures set forth in Rule 26 of the Tennessee Rules of Civil Procedure. We observe, moreover, that subsection 121(f) is one subsection in a statutory section that serves to promote the expeditious resolution of allegations of professional negligence in the healthcare setting. Accordingly, it is properly construed within the context of the statute's overall purpose and intent. *See Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503,507 (Tenn. 2004) (stating: a "statute must be construed in its entirety" and its "background, purpose, and general circumstances under which words are used in a statute must be considered"). We accordingly turn to the overall scheme of section 29-26-121.

As noted above, the General Assembly amended Part 1 of Chapter 26, Title 29, formerly known as the Medical Malpractice Act, to add sections 29-26-121 and 29-26-122 in 2008. The mandatory pre-suit notice provision contained in subsection 121(a) sets forth six requirements that serve to accomplish "related yet ultimately distinct goals." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 554 (Tenn. 2013). Subsection 121(a)(1) expressly requires the plaintiff to provide defendants with written notice of a potential healthcare liability claim at least 60 days before filing a complaint. Subsection 121(a)(2) "facilitate[s] early resolution" of potential claims by requiring plaintiffs to provide identifying information, contact information, contact information for plaintiff's legal counsel, and a HIPAA-compliant authorization allowing the defendant healthcare provider to obtain medical records from other providers included in the notice. *Id.* The subsection thus fulfills an "investigatory function[,]" providing defendants the ability to

---

[9]In *Hall v. Crenshaw*, a healthcare liability action filed prior to the effective date of the section, we held that defense counsel for a medical entity was not prohibited from conferring *ex parte* with non-party treating physicians employed by the defendant entity. The *Hall* court noted the "'basic principle of agency . . . that a corporation can act only through authorized acts of its corporate directors, officers, and other employees and agents. Thus, the acts of the corporation's agents are attributed to the corporation itself.'" *Hall*, 2014 WL 3555987, at *8 (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002)). It reasoned that any knowledge that the non-party treating physician may have had about the patient's treatment accordingly was "already imputed" to the defendant medical entity. *Id.* The *Hall* court held that neither *Givens* nor *Alsip* barred counsel for the medical entity from *ex parte* communication with the entity's own physician employees. *Id.* at *9.

evaluate the merits of the plaintiff's claim by facilitating early identification of potential co-defendants and access to the plaintiff's medical records. *Id.* Subsection 121(b) requires a plaintiff to indicate in his pleadings whether he has complied with subsection 121(a), and to attach the documentation required by subsection 121(a)(2). It also explicitly grants the trial court the discretion to excuse compliance with the section "only for extraordinary cause shown." Tenn. Code Ann. § 29-29-121(b); *Childs v. UT Med. Grp., Inc.*, 398 S.W.3d 163 (Tenn. Ct. App. 2012). Subsection 121(c) extends the applicable statutes of limitations and repose when notice is given in compliance with the section. Tenn. Code Ann. § 29-26-121(c). Subsection 121(e) provides that if a claim "is filed in good faith reliance" on subsection 121(c) but is subsequently determined not to constitute a healthcare liability action, the plaintiff may nevertheless rely on the extension of the statute of limitations and statute of repose afforded by subsection 121(c). Tenn. Code Ann. § 29-26-121(e). Subsection 121(d) entitles all the parties in a healthcare liability action to obtain complete copies of the plaintiff's medical records from other healthcare providers who received notice and the HIPAA-compliant authorization mandated by subsection 121(a). Tenn. Code Ann. § 29-26-121(d). We note that our supreme court has construed "complete medical records" to mean "medical records that are relevant to the particular claim at issue" and not the "plaintiff's entire medical history." *Stevens*, 418 S.W.3d at 558. Effective July 1, 2012, if a healthcare liability claim is filed, subsection 121(f)(1) permits the named defendants to petition the trial court for a qualified protective order allowing the defendants and their legal counsel to conduct interviews, outside of the presence of plaintiff and plaintiff's counsel, with the plaintiff's treating healthcare providers. The subsection further provides that the trial court "shall" grant the petition provided the petition identifies the treating healthcare providers whom the defendant seeks to interview. Tenn. Code Ann. § 29-26-121(f)(1)(A). Under subsection 121(f)(2), the disclosure of protected healthcare information in response to an order entered under the section is deemed permissible notwithstanding any other Tennessee state statute or common law. Tenn. Code Ann. § 29-26-121(f)(2). Finally, subsection 121(f)(3) provides that the part does not restrict the right of a defendant or his counsel "from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a healthcare liability action." We have noted that subsection 121(f)(3) appears to assume that defendants and their legal counsel have the right to conduct unrestricted *ex parte* interviews with the defendant's "present or former employees, partners, or owners concerning a healthcare liability action." *Hall*, 2014 WL 3555987, at *4, n.2.

The section is not without express limitations, however, and does not effectuate a blanket waiver of confidentiality in healthcare information by the plaintiff. Defendants must identify the healthcare providers to be interviewed, and the protection afforded by subsection 121(f)(2) is limited to disclosures made in conformance with the trial court's order. Thus, defendants may not seek to obtain protected healthcare information from healthcare providers

-16-

who are not expressly identified on the protective order, and disclosure of protected health information by providers other than those identified on the protective order is not permissible. See Tennessee Code Annotated § 63-1-117 (2010), § 63-2-101 (2010), § 68-11-312, § 68-11-1501, § 68-11-1502 (2013), § 68-11-1503 (2013), § 68-11-1504 (2010).

By its express terms subsection 121(f)(1) limits the scope of *ex parte* interviews conducted pursuant to a qualified protective order to healthcare information that is 1) otherwise protected and 2) relevant to the litigation currently pending before the trial court. The plaintiff may file a motion to limit or prohibit the *ex parte* interviews, which the trial court may grant "upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure[.]" Tennessee Code Annotated § 29-26-121(f)(1)(B). Subsection 121(f)(1)(C) provides that a qualified protective order entered under the section "shall expressly limit the dissemination of any protected health information to the litigation pending before the court." The subsection currently also requires defendants conducting interviews pursuant to the section to destroy any protected healthcare information obtained in the course of such interviews or to return it to the healthcare provider from whom it was obtained. Tenn. Code Ann. § 29-26-121(f)(1)(C)(i) (Supp. 2014). It also now requires the qualified protective order to expressly state that a treating healthcare providers's participation in any interview under the section is voluntary. Tenn. Code Ann. § 29-26-121(f)(1)(C)(ii) (Supp. 2014). With this background in mind, we turn to whether the trial court had the authority under the section to add the additional restrictions imposed on the qualified protective order entered in this case.

### *The Trial Court's Additional Restrictions*

In their brief, Defendants assert that the plain language of section 29-26-121(f)(1) prohibits trial courts from imposing any restriction or condition on a qualified protective order entered pursuant to the section other than those expressly provided by the section. They contend that "the statute clearly and unambiguously sets forth the conditions with which defendants must comply when interviewing non-party healthcare providers" and that the trial court in this case "departed from longstanding principles of statutory construction and exceeded its authority" by imposing conditions on the qualified protective order that are inconsistent with the statute. Defendants contend that the statute does not require that the interviews be conducted under oath, that a court reporter be present, or that interview transcripts be filed with the court, and that the trial court "simply does not have the authority to unilaterally and fundamentally alter the nature of the interviews contemplated by and clearly provided for in the plain language of the statute." Defendants assert that the trial court's amended order would result in interviews fundamentally different than those permitted by the section, and that it places them "in the same position as they were prior to the passage of the statute" in contravention of the General Assembly's intent to facilitate the

early resolution of healthcare liability actions.

Defendants additionally contend that, by restricting the substantive subject matter of the *ex parte* interviews to discussion of relevant protected health information, the trial court prohibited discussions regarding standard of care issues, trial preparation, or "other topics which may be related to the relevant [p]rotected [h]ealth [i]nformation." Referencing the hearings of this matter in the trial court, Defendants emphasize the trial court's ruling that the statute does not permit questioning regarding opinions relating to causation, the standard of care or standard of practice, or anything other than protected health information that is relevant to the lawsuit.

Mrs. Hayslett, on the other hand, asserts that the qualified protective order authorized by the section constitutes a pretrial discovery order. She asserts that, as a pretrial discovery matter, the order is "fully consigned to the oversight and discretion of trial judges." Mrs. Hayslett submits that the statutory language supports the addition of the conditions incorporated by the trial court where section 29-26-121(f)(1)(B) provides that a "claimant may file an objection seeking to limit or prohibit" defendants from conducting the *ex parte* interviews. She asserts that, because the statute expressly limits *ex parte* interviews to those healthcare providers who have relevant healthcare information, permitting a claimant to move to further "limit" the interviews can only be interpreted as authorizing the trial court to add limitations or conditions to the qualified protective order. She asserts that the legislative history supports this interpretation. Mrs. Hayslett additionally asserts that Defendants' "contradictory arguments belie their opposition to a trial court's discretion to place conditions on a qualified protective order." She asserts that, on one hand, Defendants argue in their brief that the statute does not "require" a court reporter, that an interview be under oath, or that a transcript be filed with the court, but assert on the other hand that it does not "prohibit" them from seeking opinions regarding the standard of care and causation issues. Mrs. Hayslett asserts that "simple logic will not allow Defendants to have it both ways." Her argument, as we understand it, is that Defendants' assertion that the statute must be narrowly construed to constrict the trial court's authority with respect to limiting the *ex parte* interviews only as expressly permitted by the statute, but broadly construed to permit Defendants to conduct *ex parte* interviews on matters not specifically disallowed, is internally contradictory.

### *Nature of the Section 29-26-121(f)(1) Interview*

We begin our consideration of the parties' arguments by noting that the parties devoted considerable attention in their briefs and at oral argument to the question of whether the qualified protective order permitted by section 29-26-121(f)(1) constitutes a "discovery" order. Although they enable pretrial investigation of facts, the *ex parte* interviews permitted

by the section clearly do not fall within the parameters of "discovery" as defined by Rule 26 of the Tennessee Rules of Civil Procedure. Rule 26.01 provides:

> Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property for inspection and other purposes; physical and mental examinations; and, requests for admission.

Rule 26.01 does not include *ex parte* interviews conducted outside the presence of opposing parties or counsel. *Alsip*, 197 S.W.3d at 727-28 (*ex parte* communications are not among the discovery methods authorized by Rule 26); *Givens*, 75 S.W.3d at 408-09 (implied covenant of confidentiality prevents a physician from informally speaking to defendant's legal counsel about plaintiff's medical information, but does not permit a physician to withhold information "in the face of a subpoena or other request cloaked with the authority of the court"). Indeed, the *Alsip* court predicated its decision, in large part, on its determination that a defendant is able to discover all of a plaintiff's relevant medical information through the discovery procedures prescribed in Rule 26.01. *Alsip*, 197 S.W.3d at 727. The *Alsip* court observed that all relevant medical information undisputedly is discoverable, and noted that "the question is simply *how* the defendant may discover it." *Id.* (emphasis in the original). The court noted that the Tennessee Rules of Civil Procedure "do not prescribe ex parte communications." *Id.* at 728. Observing that the physician-patient relationship remains confidential notwithstanding that relevant information is subject to discovery pursuant to Rule 26, the *Alsip* court also noted that the right to confidentiality in all "health information *not relevant* to the malpractice lawsuit" remains notwithstanding the action. *Id.* at 727-28 (emphasis in the original). The court recognized that *ex parte* communications permit potential "abuse" by providing defense counsel the opportunity to inquire into facts or opinions about a plaintiff's medical information or history that may not be relevant or discoverable, and determined that "because the formal methods of discovery suffice to disclose all medical information relevant to the case, the needs of the trial court system, and hence the dictates of public policy, are fulfilled without ex parte communications." *Id.* at 728. *Ex parte* communications clearly do not fall within the purview of "discovery" as its is defined by the Tennessee Rules of Civil Procedure.

Section 29-26-121(f)(1), however, authorizes a pretrial investigatory procedure that nevertheless requires a court order, and Tennessee common law has long recognized the broad inherent authority of trial courts to control proceedings in their courts. *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). As noted above, the section expressly grants the trial court the discretion to grant a motion to limit or prohibit *ex parte* interviews upon good cause shown that the treating healthcare provider does not possess

relevant information as defined by the Tennessee Rules of Civil Procedure. Tenn. Code Ann. § 29-26-121(f)(1)(B). The section does not provide unlimited access to a plaintiff's healthcare providers, nor does it put defendants on "equal footing" with respect to the ability to question a plaintiff's healthcare providers. By its express terms, the statute is applicable to protected healthcare information that is relevant to the lawsuit, at least with respect to interviews conducted with healthcare providers who are not a defendant's own agents. The section also expressly limits the dissemination of protected healthcare information from all healthcare providers to the litigation currently pending before the trial court and, as amended in 2013, requires defendants to destroy or return any protected information gained in the course of any interview. Tenn. Code Ann. § 29-26-121(f)(1)(C)(i). It also currently mandates that a qualified protective order entered under the section expressly provides that participation by a healthcare provider is voluntary. Tenn. Code Ann. § 29-26-121(f)(1)(C)(ii).

To the extent to which the section permits the trial court to exercise its discretion over the scope of *ex parte* interviews conducted under it, we review the trial court's discretionary decisions under an abuse of discretion standard. *See Stevens,* 418 S.W.3d at 553 (holding: the trial court's decision to excuse compliance with § 29-26-121(a) is reviewed for an abuse of discretion); *Deuel v. Surgical Clinic, PLLC*, No. M2009-01551-COA-R3-CV, 2010 WL 3237297, at *6 (Tenn. Ct. App. Aug. 16, 2010) (citations omitted) (a trial court's order granting or denying a discovery protective order is reviewed for an abuse of discretion). However, regardless of whether the *ex parte* interviews contemplated by the section may be considered "discovery" or "procedural," a trial court abuses its discretion when, *inter alia*, it applies an incorrect legal standard. *Stevens*, 418 S.W.3d at 553. The initial question in this case is not whether the trial court abused its discretion, but the extent and scope of the trial court's authority under the statute. Thus we turn to whether the statute affords the trial court the authority to impose the conditions on the qualified protective order entered in this case.

### *Court Reporter, Oath, and Filing of Transcript*

We turn first to whether section 29-26-121(f)(1) affords the trial court the authority to require that a court reporter be present at *ex parte* interviews conducted pursuant to the section, that all interviews be recorded, that they be conducted under oath, and that transcripts of the interviews be filed under seal to enable Mrs. Hayslett to review them, after good cause shown, for violation of privacy rights under HIPAA. We must agree with Defendants that these conditions transform the investigatory interviews authorized by the section into quasi-depositions in contravention of the substantive purpose of the section as discussed herein.

Tennessee Rule of Civil Procedure 26.01 provides for discovery by several methods,

-20-

including depositions upon oral examination. A deposition is "[a] witnesses's out-of-court testimony that is reduced to writing[.]" Black's Law Dictionary, 534 (10th ed.). Testimony is defined as "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition." *Id.* at 1704. Oath is defined as "[a] solemn declaration . . . that one's statement is true[,]" and "[t]he person making the oath implicitly invites punishment if the statement is untrue[.]" *Id.* at 1239.

As discussed above, the *ex parte* interviews permitted by the statute do not constitute formal discovery under current Rule 26 of the Tennessee Rules of Civil Procedure. Additionally, section 26-29-121(f)(1) modified the supreme court's holdings in *Givens* and *Alsip* by overruling the court's total prohibition against a defendant's *ex parte* communication with a plaintiff's treating healthcare providers. The section restored a defendant's ability to conduct *ex parte* interviews outside of the formal discovery process but within statutory parameters that do not extend to matters beyond protected health information. Notwithstanding Mrs. Hayslett's assertion in her brief that, contrary to Defendant's assertion, the section prescribes "interviews" and not "informal interviews," the section clearly does not contemplate the formalities of a deposition.

We are not insensitive to the concern expressed by Mrs. Hayslett and the trial court that a defendant or counsel may abuse the *ex parte* interviews permitted by the section to inquire into facts or opinions that are not relevant or that may not lead to the discovery of admissible evidence. As this court noted at oral argument, the high ethical standards of the Bar notwithstanding, our adversarial system does not rely on the "trust me" principle. However, we observe that the potential for abuse was addressed by the *Alsip* court, *Alsip*, 197 S.W.3d at 728; the section provides no mechanism for review by the plaintiff; and the section expressly authorizes defendants and their attorneys the "right" to interview relevant healthcare providers "outside the presence of claimant or claimant's counsel" in order to obtain relevant protected health information. As also noted by the court in *Alsip*, a plaintiff's relevant healthcare information is discoverable and treating healthcare providers certainly may be deposed as provided by Rule 26. We presume the General Assembly was aware of the state of the law and the concerns expressed by the court in *Givens* and *Alsip* when it enacted section 29-26-121(f). *See Lee Med.,* 312 S.W.3d at 527.

We additionally observe that section 29-26-121(f)(1) is limited to health information that is protected and relevant to the litigation pending before the trial court. The current version of the statute, moreover, expressly requires qualified protective orders to state that a healthcare provider's participation in an *ex parte* interview is voluntary. The statute also provides that any disclosure of protected health information made in response to an order entered under the section shall be deemed permissible under Tennessee law, notwithstanding any other Tennessee statute or common law. Tenn. Code Ann. § 29-26-121(f)(2). Nothing

in the statute as it existed in 2012 prohibited a healthcare provider from refusing to participate in an *ex parte* interview, from refusing to respond to particular questions, from requiring or disallowing presence of counsel, or from otherwise refusing to discuss his patient's healthcare information other than in a formal deposition.

Because the trial court's order requires: 1) healthcare providers respond under oath in interviews permitted under subsection 121(f)(1); 2) the interviews be held in the presence of a court reporter; and 3) the interviews be recorded and filed under seal for potential review by Mrs. Hayslett and her counsel, thereby transforming the *ex parte* interviews authorized by the section into quasi-depositions in contravention of the legislative purpose of the statute, we hold that Tennessee Code Annotated § 29-26-121(f) does not provide a court with the authority to include those provisions in the qualified protective order.

### *Restricting the Order to "relevant protected health information"*

We next turn to whether the trial court erred by including in the qualified protective order that:

> Relevant Protected Health Information may be elicited directly or indirectly from a healthcare provider during the *ex parte* interview. Defendants should not attempt to elicit or discuss Protected Health Information which is not relevant to the issues in this lawsuit. This does not restrict the Defendants or their attorneys from discussing non-substantive matters unrelated to the patient's Protected Health Information.

As noted above, the qualified protective order authorized by section 29-26-121(f)(1) is expressly limited to relevant "protected health information." An order entered pursuant to the section gives defendants and their counsel the right to obtain such information through *ex parte* interviews with the plaintiff's treating healthcare providers. Tenn. Code Ann. § 29-26-121(f)(1). Defendants in this case do not contend that a qualified protective order entered under the section permits dissemination of protected healthcare information that is irrelevant to the litigation. Rather, Defendants' argument, as we understand it, is that the section permits defendants and their counsel to elicit opinions regarding whether a defendant's acts or omissions caused the plaintiff's injury, the standard of care, and other matters during the *ex parte* interviews authorized by the section.[10] We disagree.

---

[10]The trial court's order in this case does not specifically set-forth the "non-substantive matters" that it disallows. Although a trial court speaks through its written orders and not through oral statements, *Alexander v. JB Partners*, 280 S.W.3d 772, 777 (Tenn. Ct. App. 2011), the trial court is best situated to interpret its own orders. *Jackman v. Jackman*, 373 S.W.3d 535 (Tenn. Ct. App. 2011). It is clear from the

-22-

In *Alsip*, the supreme court unambiguously disallowed all *ex parte* communication between defense counsel and a plaintiff's treating physicians as a matter of public policy. *Alsip*, 197 S.W.3d at 722. By its terms, section 29-26-121(f)(1) is limited to *ex parte* interviews regarding relevant protected health information that is under the control of plaintiff's treating healthcare providers and otherwise confidential. The section modified the supreme court's holdings in *Givens* and *Alsip* that public policy and the implied contract of confidentiality prohibited healthcare providers from discussing a patient's healthcare information with third parties other than as otherwise required by law and the formal discovery process. It is designed to enable defendants to ascertain identifying information and relevant healthcare information more expeditiously than otherwise allowed by the formal discovery process in order "to evaluate the substantive merits of a plaintiff's claim[.]" *Stevens*, 418 S.W.3d at 555. Contrary to Defendants' arguments in their brief and at the February 2014 hearings before the trial court, there is nothing in the statute to indicate that the General Assembly intended the section to serve as a mechanism to prepare potential witnesses for questioning either in formal discovery or at trial. The opportunity granted by the subsection is a limited one; it is limited to interviewing a plaintiff's treating healthcare providers to obtain information - specifically, the plaintiff's relevant protected health information that is in the direct knowledge and control of the plaintiff's treating healthcare providers. *See id.* at 558. It does not extend to opinions regarding whether a defendant healthcare provider's acts or failure to act, as the case may be, caused the injury complained of by plaintiff in the lawsuit, or to the standard of care or standard of practice employed by the defendants. This construction of the scope of the *ex parte* interviews permitted by section 29-26-121(f)(1) is further supported by subsection 121(f)(3), which contains no limitation or restriction with respect to a defendant's *ex parte* communication with the defendant's own partners, employees or, assuming an institutional defendant, owners. Because this particular provision in the trial court's qualified protective order does no more than reflect the parameters of the statute, we discern no error and affirm this provision.

**Holding**

In light of the foregoing, we reverse in part affirm in part, and remand this matter to

transcript of the February 2014 hearing that the trial court interpreted its order as prohibiting *ex parte* questioning by Defendants with respect to causation, the standard of care, the standard of practice or any matter requiring an opinion about a Defendant's acts or omissions. The trial court stated that the conditions contained in the order "specifically exclude even from the protected health information area questions about the doctor's opinion on standard of care required for this kind of treatment and standard of practice, that sort of thing. . . . I don't think the statute extends to the expert opinions." We additionally observe that a considerable portion of the hearing before the trial court was devoted to the nature and extent of questioning permitted by the qualified protective order, and that defense counsel sought detailed clarification in order to abide by the trial court's order and avoid any possible contempt.

the trial court for further proceedings consistent with this Opinion. Costs on appeal are taxed one-half to the Plaintiff/Appellee, Alethea Dean-Hayslett and one-half to Defendants/Appellants, Methodist Healthcare Memphis Hospitals, a Tennessee Corporation, d/b/a Methodist Hospital North and Mohamad Moughrabieh, M.D. As noted above, this is an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure and is limited to the issues for which the appeal was granted. We accordingly decline to address Defendants' assertion that the statute denies the trial court the authority in any circumstance to impose any condition or limitation on a qualified protective order other than as expressly provided by section 29-26-121(f)(1) as beyond the scope of the issue certified for extraordinary appeal and, therefore, advisory. To the extent that the concurring opinion suggests that we reached a determination on that issue, we disagree.

_____
ARNOLD B. GOLDIN, JUDGE